# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| Subject Premises 1 thru 8 and the 13 Target Subjects which are further described in Attachment A-1 thru A-8 which are attached hereto and incorporated herein | ) |

Case No.  MR 24-278, MR 24-279,
MR 24-280, MR 24-281, MR 24-282,
MR 24-283, MR 24-284 and MR 24-285

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1thru A-8, which are attached hereto and incorporated herein.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a) 18 U.S.C. §§ 924(c), 922(g), 922 (o), 856, 371, 792, 1962, 1959 | Attempt and Conspiracy to Distribute Controlled Substances; PWITD; Armed Drug Trafficking; FIP; Unlawful Possession of a Machine Gun; Maintaining a Drug Involved Premises; Conspiracy; Harboring a Fugitive; RICO; and VICAR |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jordan Spaeth, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_subscribed electronically and sworn telephonically_ *(specify reliable electronic means).*

Date: ___02/13/2024___

_____
*Judge's signature*

City and state: __Albuquerque, New Mexico__

Jennifer M. Rozzoni, United States Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

## INTRODUCTION

1.      I, Jordan Spaeth, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search:

  a.  The real property, improvements, residence of record or residence known to be accessed by DAVID JARAMILLO, aka: "SPIDER," REYNALDO JARAMILLO, aka: "RAY," CHRISTOPHER PEREZ, aka: "LIL CHUCO," MARTIN JARAMILLO, aka: "TEENER," and FELIX SILVA, aka: "GATO," located at 2907 Carlton Street NW, Albuquerque, NM 87107 (hereinafter "Subject Premises 1");

  b.  The real property, improvements, and residence of record of JUSTIN CROWLEY, aka: "GHOST," located at 2925 Indiana Street NE, Albuquerque, NM 87110 (hereinafter "Subject Premises 2");

  c.  The real property, improvements, and residence of record of ELTON WALKER, aka: "SPACE," located at 1319 Cherokee Road NW, Albuquerque, NM 87107 (hereinafter "Subject Premises 3");

  d.  The real property, improvements, and residence of record of DAVID ALARID, aka: "ZACH," located at 4600 11th Street NW, Albuquerque, NM 87107 (hereinafter "Subject Premises 4");

  e.  The real property, improvements, and residence of record of STEVEN GOMEZ, aka: "SCRAPPY," located at 218 Candelaria Road NW, Albuquerque, NM 87107 (hereinafter "Subject Premises 5");

  f.  The real property, improvements, and residence known to be accessed by CHARLES GOMEZ, aka: "CUCU," and ERIC GOMEZ, aka: "INDIO," located 120 Veranda Road NW, Albuquerque, NM 87107 (hereinafter "Subject Premises 6");

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

    g.   The apartment known to be accessed by JEREMIAH MARTINEZ, aka: "CYCLONE," located at 405 San Pablo Street SE, Apartment 8, Albuquerque, NM 87108 (hereinafter "Subject Premises 7"); and

    h.   The apartment known to be accessed by STEVO PAULINO, aka: "HEAVEN," located at 405 San Pablo Street SE, Apartment 13, Albuquerque, NM 87108 (hereinafter "Subject Premises 8").

2.    Descriptions and photographs of each of the Subject Premises are contained within Attachment A to each warrant application.

3.    Based on the facts and information set forth herein, there is cause to believe that DAVID JARAMILLO, aka: "SPIDER;" REYNALDO JARAMILLO, aka: "RAY;" CHRISTOPHER PEREZ, aka: "LIL CHUCO;" FELIX SILVA, aka: "GATO;" MARTIN JARAMILLO, aka: "TEENER;" JUSTIN CROWLEY, aka: "GHOST;" ELTON WALKER, aka: "SPACE;" DAVID ALARID, aka: "ZACH;" STEVEN GOMEZ, aka: "SCRAPPY;" CHARLES GOMEZ, aka: "CUCU;" ERIC GOMEZ, aka: "INDIO;" JEREMIAH MARTINEZ, aka: "CYCLONE;" and STEVO PAULINO, aka: "HEAVEN;" (collectively referred to as the "Target Subjects") have committed, aided and abetted, and conspired to commit the following felonies (collectively referred to herein as the "Target Offenses"):

    a.   21 U.S.C. § 846 Attempt and Conspiracy to Distribute Controlled Substances;

    b.   21 U.S.C. § 841(a) Possession with Intent to Distribute Controlled Substances;

    c.   18 U.S.C. § 924(c) Possession of a Firearm in Furtherance of a Drug Trafficking Crime;

    d.   18 U.S.C. § 922(g) Being a Prohibited Person in Possession of Firearm or Ammunition;

    e.   18 U.S.C. § 922(o) Unlawful Possession of a Machine Gun;

    f.   18 U.S.C. § 856 Maintaining a Drug Involved Premises;

    g.   18 U.S.C. § 371 Conspiracy;

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

    h.   18 U.S.C. § 792 Harboring or Concealing a Fugitive;

    i.   18 U.S.C. § 1962 Racketeering Influenced Corrupt Organization (RICO); and

    j.   18 U.S.C. § 1959 Violent Crime in Aid of Racketeering (VICAR).

4.      Descriptions and photographs of each of the Target Subjects are contained within Attachment A to each warrant application.

5.      This affidavit also seeks the Court's permission to allow the FBI agents executing the search warrant to search the bodies of the male[1] Subjects for gang tattoos evidencing membership in or associated with the Brew Town Locos ("BTL") or any other gang, and to photograph those tattoos. I believe such tattoos may constitute a conspiratorial overt act.

6.      Based on the facts and information set forth herein, there is cause to believe that evidence of those crimes, further described in Attachment B to each search warrant application, is likely to be found on the Subjects persons, with the Subjects' personal property, and at the Subject Premises. This affidavit is submitted for the limited purpose of establishing probable cause for warrants authorizing searches of the Subjects and the Subject Premises. This affidavit therefore sets forth the facts and information necessary to establish  probable cause for those search warrants, and it does not include all of my knowledge related to this ongoing investigation. All figures, times, and calculations set forth herein are approximate.

<u>**SYNOPSIS**</u>

---

[1] Male BTL gang members get a spider tattoo on the inside of their left forearm, as they continue in the gang and get status they may get more elaborate tattoos, which represent how dedicated they are to the gang. I have not seen female BTL members to utilize tattoos to represent status in the gang. I do know that female gang members will get a spider tattoo on their left ring finger and female member's tattoos are not expected to carry the same relevance to gang activity and rank, which is why I am requesting the-body-of search authority only for the male members.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

7.      Almost four years ago, the FBI Albuquerque Violent Gang Task Force ("VGTF") began investigating the criminal activities of the BTL Gang, based on tips that the BTL was heavily armed, committing violent crime, and operating a conspiracy to traffic controlled substances. Since then, the VGTF, which includes officers from the Rio Rancho Police Department, New Mexico State Police, Bernalillo County Sheriff's Office, and Albuquerque Police Department, has arrested dozens of BTL Gang members and associates, with 31 of those subjects being charged federally; executed several dozen search warrants; seized hundreds of thousands in US Currency and property; seized more than 100 firearms, including multiple stolen firearms, machineguns; seized thousands of rounds of ammunition and high capacity magazines; and seized bulk amounts of heroin, fentanyl, and methamphetamine.

8.      During the last year, there have been 16 Homicides, 24 sex crimes, 49 Robberies, 470 Aggravated Assaults/Aggravated Batteries, 358 Burglaries, 358 Auto Thefts, 30 Shootings, and 11 Stabbings in the BTL neighborhood. In the pages that follow, I will outline pervasive problems which have plagued Albuquerque for some time, which are fentanyl and violence. Below, I have outlined six homicides and two shootings committed by or directed towards the BTL. Several of the investigations remain on-going and I believe evidence tending to assist investigators may be located during the execution of the applied for search warrants.

9.      Within the last several months, VGTF agents have learned about a conspiracy to traffic controlled substances, obtain and utilize firearms to further the BTL enterprise by BTL Gang members and associates DAVID JARAMILLO, aka: "SPIDER;" RAY JARAMILLO;CHRISTOPHER PEREZ, aka: "LIL CHUCO;" FELIX SILVA, aka: "GATO;" MARTIN JARAMILLO, aka: "TEENER;" JUSTIN CROWLEY, aka: "GHOST;" ELTON WALKER, aka: "SPACE;" DAVID ALARID, aka: "ZACH;" STEVEN GOMEZ, aka: "SCRAPPY;" JESSE CAMPOS; JEREMIAH MARTINEZ, aka: "CYCLONE;" and STEVO PAULINO, aka: "HEAVEN." This affidavit is submitted in support of eight

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

(8) warrants to search the residences of the Target Subjects, which are believed to contain evidence of Attempt and Conspiracy to Distribute Controlled Substances; Possession with Intent to Distribute Controlled Substances; Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Being a Prohibited Person in Possession of Firearm or Ammunition; Unlawful Possession of a Machine Gun; Maintaining a Drug Involved Premises; Harboring or Concealing a Fugitive; Racketeering Activities and Conspiracy to Commit Racketeering Activities; and Violent Crime in Aid of Racketeering Activity (hereinafter referred to as the Target Offenses).

## BASIS OF INFORMATION

10.     During my investigation, I have developed information I believe to be reliable from the following sources:

    a.   Information from the New Mexico Corrections Department (NMCD), United States Marshals Service (USMS), Bernalillo County Sheriff's Office (BCSO), New Mexico State Police (NMSP), Albuquerque Police Department (APD), Metropolitan Detention Center (MDC) Strategic Threat Intelligence Unit (STIU) officers and other law enforcement or corrections officials (also referred to herein as "agents"), including oral and written reports;

    b.   Results of physical surveillance;

    c.   Results of electronic surveillance;

    d.   Results of consensually recorded phone calls;

    e.   Information provided by informants;

    f.   Information provided by cooperating defendants and their attorneys; and,

    g.   Records from the FBI National Crime Information Center (NCIC), U.S. District Courts, New Mexico Courts, and the New Mexico Motor Vehicle Division (MVD).

## TRAINING AND EXPERIENCE

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

11.     I am a special agent with the FBI and am a law enforcement officer of the United States, within the meaning of Rule 41 of the Federal Rule of Criminal Procedure. I have been a sworn law enforcement officer for over 15 years, serving as a police officer and FBI special agent. I have been an FBI special agent since 2018 and am currently assigned to the FBI's field office in Albuquerque, New Mexico, and to the VGTF. As a member of the VGTF, my primary responsibility is to investigate criminal enterprises involving violent gang members and their associates who participate in murders, violations of the Controlled Substances Act, firearms violations, racketeering, and other violations of federal law.

12.     Before being assigned to the VGTF, I was assigned to the Violent Crime Task Force (VCTF) and also investigated felony crimes in Indian Country. During my time on the VCTF, I investigated violent repeat offenders, the "worst of the worst" in the Albuquerque area, who participated in crimes such as commercial store robberies, carjackings, bank robberies, interstate threats, violations of federal firearm laws and the Controlled Substances Act. I also investigated violent felonies which were committed on the various Indian Reservations and Pueblos surrounding Albuquerque, which included crimes such as murder, aggravated assault with a deadly weapon, rape, and use of a firearm while in the commission of a violent crime.

13.     My investigative training and experience include, but is not limited to, reviewing and analyzing phone records, interviewing subjects, targets, and witnesses, writing affidavits for, and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public and financial records. I have conducted hundreds of hours of surveillance on subjects, gang members, and associates suspected of, charged with, and/or convicted of violations of federal law, to include violations of the Target Offenses. Over the course of my career, I have arrested hundreds of persons for offenses including, but not limited to, murder, armed robbery, firearm violations, bank robbery, illegal narcotics possession and distribution, racketeering, and aggravated assault. I have also been responsible for serving

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

subpoenas and supervising cooperating sources and undercover agents.

14.     I am the government's lead case agent in the investigation of the BTL Gang. Over the course of that investigation, more than 30 BTL Gang members and associates have been charged federally. I have interviewed several dozen BTL Gang members, including leadership and associates.  I have also participated in the execution of dozens of search warrants on members, associates, sources of supply, residences, and property for evidence of racketeering activity, VICAR murder, violations of the Controlled Substances Act, and federal firearms violations.

15.     Based on my experience, I am aware gang/criminal enterprises and drug traffickers utilize cellular telephones to exchange information, photographs, and felonious communications, to include the names and locations of informants, witnesses, and victims. I have also observed gang members discuss the acquisition and distribution of controlled substances and firearms to and from other members, as well as discussions about gang related assaults.

16.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

17.     In my training and experience, individuals involved in gang/criminal enterprises and Drug Trafficking Organizations (DTOs) work hard not to get caught, including continually assessing who they think is cooperating with law enforcement and how to protect themselves from those people. These individuals seek out information tending to expose government informants and share that information with other members of the organization for the common good of the enterprise. I know that gang/criminal

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

enterprises and members of DTOs strive to have a reputation of retaliation against informants or intimidation against government officials. I have personally been involved in gang/criminal enterprise investigations involving informants who were exposed and murdered or threatened by the gang. I have learned that individuals involved in gang/criminal enterprises and DTOs often utilize their cell phones to communicate with others regarding suspected informants or government officials. I have also learned that gang/criminal enterprises and members of DTOs will research government officials in an attempt to ascertain their identity and the locations of their residences, in that they may search for this information on the cellular devices.

18.    Based upon my training, experience, and participation in the instant investigation, as well as the investigation of other gang/criminal enterprises and DTOs, I am aware of the following information.

  (a) Individuals engaged in the type of criminal conduct constituting the Target Offenses maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses. This documentary evidence includes telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as, MoneyPak, Wal-Mart, Green Dot, or other debit cards, bulk U.S currency, money collection logs, such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

  (b) I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking,

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

routinely use pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. I have observed incarcerated members of gang/criminal enterprises utilize non-gang member's personal identification number when making prison/jail telephone calls to mask their conversations and decrease the likelihood institutional gang investigators will monitor the call. Members of gang/criminal enterprises and DTOs often use the same strategy to mask their ownership of vehicles, real property, and utility services, in an effort to avoid detection by law enforcement.

(c) In addition, I am also familiar with the use of text messaging, instant messaging, social media, and other messaging applications, used by gang/criminal enterprises and DTOs to advance their unlawful activities.

(d) I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to, driver's licenses, rent receipts, bills, and address books. These items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

### ELECTRONIC MEDIA AND FORENSIC ANALYSIS

19. As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the Subjects persons and at the Subject Premises, in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on electronic media. For this reason, I submit that if a computer,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

digital medium, or storage medium is found on the Subject Premises, there is probable cause to believe those records will be stored on that computer, digital medium, or storage medium. Thus, the warrant applied for would authorize the seizure of electronic media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

20.     *Necessity of seizing or copying entire electronic media.* In most cases, a thorough search of a premises for information that might be stored on electronic media often requires the seizure of the physical electronic media and later off-site review consistent with the warrant. In lieu of removing electronic media from the premises, it is sometimes possible to make an image copy of electronic media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the electronic media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

> (a) The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Electronic media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

> (b) Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software

available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Subject Premises. However, taking the electronic media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

(c) Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of electronic media formats that may require off-site reviewing with specialized forensic tools.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying electronic media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

22. The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

(a) I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

(b) If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

(c) If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

(d) In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

(e) As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

(f) I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

(g) In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features in the same manner as discussed above.

(h) Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

### CONFIDENTIAL HUMAN SOURCES

23.     During the course of this investigation, FBI case agents utilized multiple  Confidential Human Sources[2] (hereinafter "CHS" for both singular and plural) to infiltrate and report on the activities of the

---

[2]  The FBI utilize the term CHS to describe an informant; however, other agencies may use Confidential Source (CS), Confidential Informant (CI), Confidential Witness (CW), or Source of Information (SOI). Herein, I have also used the term CHS to describe a Cooperating Defendant (CD). I believe the various terms are interchangeable, but for the purpose of this affidavit I have only used the term CHS.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Target Subjects. In the paragraph that follows, I have provided an overview of each CHS, to include their basis of knowledge concerning the criminal conduct; motivation to assist the FBI; criminal history; any compensation received from the government; and a statement concerning their reliability. I have tried to provide sufficient information to the Court, while balancing the anonymity and safety of the various sources.

24.   **CHS-1** is a close associate to veteran BTL Gang members and is an experienced former drug trafficker. CHS-1 has been involved with the Target Subjects for several years. CHS-1 is motivated to assist the FBI, in part, because they are hoping to clean up the community and they are also motivated by monetary compensation. CHS-1 has been convicted of one felony for a crime of moral turpitude. CHS-1 has been compensated approximately $11,750 by the FBI for their cooperation. CHS-1 has been assisting the FBI for three years and has provided considerable assistance in multiple other FBI investigations. CHS-1 has participated in several controlled drug buys at the direction of the FBI and worn a covert recording device several times. The information that CHS-1 provided has led to dozens of search warrants, approximately two dozen arrests, and the seizure of dozens of firearms, along with a significant amount of U.S. Currency, controlled substances, and property. I believe the information provided by CHS-1 to be reliable because much of it has been corroborated by independent investigation, search warrants, controlled evidence purchases, and surveillance. I am unaware of any false or misleading information that CHS-1 has provided.

25.   **CHS-2** is a BTL Gang member, former drug trafficker and has previously participated in drug trafficking with at least one of the target subjects in the past. CHS-2 has extensive personal knowledge regarding cross border drug trafficking and has been a BTL member for several years. CHS-2 was arrested by the FBI and is motivated to assist the FBI in hope of receiving a positive recommendation in a pending criminal matter, self-preservation, and to avoid future prosecution. CHS-2 did receive positive

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

recommendation in the pending criminal matter. CHS-2 has felony convictions for aggravated assault, shooting at an occupied dwelling, and an immigration violation. CHS-2 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-2 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-2 has provided.

26.     **CHS-3** is a close associate to BTL gang members and drug traffickers. CHS-3 has previously participated in drug trafficking with the BTL. A family member of CHS-3 was arrested by the FBI and CHS-3 was motivated to assist the FBI in hope that the family member would receive a positive recommendation in a pending criminal matter. The family member did receive positive recommendation in the pending criminal matter. CHS-3 was also motivated by monetary compensation. CHS-3 has a felony conviction for drug trafficking. CHS-3 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-3 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-3 has provided.

27.     **CHS-4** is an associate to gang members and drug traffickers. CHS-4 has been providing information to the FBI for about a year. The information CHS-4 provided has led to multiple search warrants, arrests, the seizure of distribution quantities of controlled substances, and firearms. CHS-4 has no felony convictions and has been paid approximately $5,500 by the FBI for their cooperation. I believe the information provided by CHS-4 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-4 has provided.

28.     **CHS-5** is an associate to gang members and drug traffickers. CHS-5 has previously participated in drug trafficking with at least one of the target subjects in the past. CHS-5 has extensive personal knowledge regarding drug trafficking and Albuquerque gangs. CHS-5 has assisted the FBI in the instant investigation and two other investigations. CHS-5 has conducted a controlled purchase of a controlled

substance at the direction of the FBI and worn a covert recording device several times. CHS-5 is motivated to assist the FBI in hope of helping a family member who was arrested by the FBI to receive a positive recommendation in a pending criminal matter. CHS-5 does not have any felony convictions. CHS-5 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-5 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-5 has provided.

29.      **CHS-6** is familiar with an on-going investigation and knowledgeable about the BTL neighborhood. CHS-6 is motivated to assist the FBI in hopes to clean up the community and for self-protection. CHS-6 does not have any felony convictions and they were not paid by the FBI for their cooperation. I believe the information provided by CHS-6 to be reliable because much of it has been corroborated by independent investigation.

30.      **CHS-7** is a former gang member, former drug trafficker and has been associated with at least two of the Target Subjects in the past. CHS-7 has personal knowledge regarding drug trafficking and gangs, as they were a well-known member of the Albuquerque drug and gang world. CHS-7 has assisted the FBI in the current investigation and two other investigations. CHS-7 was arrested by the FBI and is motivated to assist the FBI in hope of receiving a positive recommendation in a pending criminal matter. CHS-7 has felony convictions for possession of a controlled substance, unlawful taking of a motor vehicle, aggravated battery against a household member, battery upon a peace officer, and conspiracy. CHS-7 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-7 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-7 has provided.

31.      **CHS-8** is an associate to gang members and drug traffickers. CHS-8 was arrested by the FBI and was motivated to assist the FBI in hopes to receive a positive recommendation in a pending criminal

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

matter. CHS-8 provided information in the instant investigation as well as a pending murder investigation. CHS-8 has felony convictions for drug trafficking, possession of a firearm by a convicted felon, possession of a controlled substance, burglary, and conspiracy. CHS-8 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-8 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-8 has provided.

32.     **CHS-9** has extensive personal knowledge about one of the Subject Premises. CHS-9 is motivated to assist the FBI in hopes to clean up the community. CHS-9  does not have any felony convictions and they were not paid by the FBI for their cooperation. I believe the information provided by CHS-9 to be reliable because much of it has been corroborated by independent investigation.

33.     **CHS-10** has extensive personal knowledge about one of the Subject Premises. CHS-10 is motivated to assist the FBI in hopes to clean up the community. CHS-10 does not have any felony convictions and they were not paid by the FBI for their cooperation. I believe the information provided by CHS-10 to be reliable because much of it has been corroborated by independent investigation.

34.     **CHS-11** is a former gang member, former drug trafficker and has been associated with at least two of the Target Subjects in the past. CHS-11 has extensive personal knowledge regarding interstate drug trafficking and gangs. CHS-11 was arrested by the FBI and is motivated to assist the FBI in hope of  receiving a positive recommendation in a pending criminal matter and to avoid future prosecution. CHS-11 has felony convictions for drug trafficking, possession of a firearm by a convicted felon, burglary, breaking and entering, and receiving/transferring a stolen motor vehicle. CHS-11 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-11 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-11 has provided.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

### THE SUBJECTS

35.    <u>DAVID JARAMILLO, aka: "SPIDER"</u>: DAVID JARAMILLO is a BTL Gang member. DAVID JARAMILLO is believed to be the son of REYNALDO JARAMILLO. DAVID JARAMILLO has a spider tattoo and the letters "UZI" on his face.[3] JARAMILLO has at least 17 prior arrests in New Mexico for battery on a household member, criminal damage to property (household member)(under $1,000), failure to appear, probation violation 3x, armed bank robbery, use of a firearm during and in relation to a crime of violence, escape from jail, fail to comply with conditions of probation 2x, aggravated burglary with a deadly weapon, tampering with evidence, larceny, indecent exposure, concealing identity, criminal damage to property $1,000 or less 2x, and DWI.

36.    Upon reviewing US District of New Mexico online court records and the New Mexico online secure court case information, I believe JARAMILLO has been convicted of the following offenses which prohibit him from possessing a firearm:

   a.  Domestic Assault, on May 22, 2019, in the Torrance County Magistrate Court, Case No. M-56-VM-2018-00017;

   b.  Armed Bank Robbery and Use of a Firearm (Brandish) During and in Relation to a Crime of Violence, on February 20, 2002, in the US District Court for the District of New Mexico, Case No. CR01-1722MV;

   c.  Burglary (Commercial/Automobile), on June 17, 1997, in the Bernalillo County District Court, Case No. D-202-CR-1996-03672; and

   d.  Criminal Damage to Property More than $1,000, on July 24, 1996, in the Bernalillo County District Court, Case No. D-202-CR-1996-00545.

---

[3] I believe the letters "UZI" stand for United Zia Initiative, which was a federal prison gang formed by New Mexican inmates in Bureau of Prison facilities.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

37.    REYNALDO JARAMILLO, aka: "RAY": REYNALDO JARAMILLO is a suspected BTL Gang member and believed to be the father of DAVID JARAMILLO. REYNALDO JARAMILLO has at least 9 arrests in New Mexico for DWI, contempt of court, possession of methamphetamine, possession of drug paraphernalia with intent to distribute, aggravated battery on a household member 2x, aggravated assault on a household member with a deadly weapon, false imprisonment, tampering with evidence, and domestic violence.

38.    Upon reviewing the New Mexico online secure court case information, REYNALDO JARAMILLO has been convicted of the following offense which prohibits him from possessing a firearm: Aggravated Assault Against a Household Member, on February 19, 2002, in the Bernalillo County District Court, Case No. D-202-CR-2000-04991.

39.    CHRISTOPHER PEREZ, aka: "LIL CHUCO": PEREZ is a BTL Gang member and has at least 8 prior arrests in New Mexico for felony possession of a controlled substance 6x, tampering with evidence 2x, concealing identity, prohibited person (drug addict) in possession of a firearm and ammunition, and receipt, transportation, or possession of a firearm or destructive device by a felon. PEREZ violated his probation on the below referenced case and a probation violation warrant was issued in April 2023. The arrest warrant was issued by the US District Court for the District of New Mexico in April of 2023, Case No. 1:20CR02116-001MV. PEREZ has not been arrested on the aforementioned arrest warrant.

40.    Upon reviewing the New Mexico online secure court case information, I believe PEREZ has been convicted of the following offense which prohibits him from possessing a firearm: Prohibited Person in Possession of a Firearm, on December 21, 2021, in the US District Court for the District of New Mexico, Case No. D-202-CR-2012-00309.

41.    FELIX SILVA, aka: "GATO": FELIX SILVA is a BTL Gang member who has at least 24 arrests

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

in New Mexico for aggravated assault, receiving/transferring a stolen vehicle 3x, possession of a controlled substance (felony) 2x, resisting/evading or obstructing an officer (arrest), concealing identity, tampering with evidence – attempt, possession of a controlled substance (felony) – attempt, probation violation, possession of drugs, criminal damage, possession of drug paraphernalia, larceny, DWI (aggravated), habitual offender, auto burglary, assault with a deadly weapon (aggravated)(firearm), trafficking (possession with intent to distribute)(cocaine), possession of a firearm by a felon 2x, commercial burglary, failure to appear 8x, possession of a controlled substance (felony) 2x, possession of a controlled substance (crack cocaine)(felony), trafficking a controlled substance by possession, failure to comply with conditions of probation, conspiracy, eluding a police officer, and larceny (under $250) (misdemeanor).

42.    Upon reviewing the New Mexico online secure court case information, SILVA has been convicted of the following offense which prohibits him from possessing a firearm: Receiving or Transferring a Stolen Motor Vehicle and Controlled Substance, Possession Prohibited, on April 27, 2005, in the San Miguel County District Court, Case No. D-412-CR-2005-00061; Escape From Jail, on February 23, 1999, in the Bernalillo County District Court, Case No. D-202-CR-1998-02253; Failure to Appear, on February 23, 1999, in the Bernalillo County District Court, Case No. D-202-CR-1998-02252; Burglary (Commercial/Automobile), on November 17, 1998, in the Bernalillo County District Court, Case No. D-202-CR-1997-00591; and Possession of a Firearm/Destructive Device by a Felon, on November 17, 1998, in the Bernalillo County District Court, Case No. D-202-CR-1997-00590.

43.    MARTIN JARAMILLO, aka: "TEENER":  MARTIN JARAMILLO is a BTL Gang member who been arrested at least 11 times in New Mexico for possession of a controlled substance (with intent to distribute)(felony), attempt to commit a felony (possession of methamphetamine), contributing to the delinquency of a minor (felony), probation violation, DWI, possession of drug paraphernalia,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

receiving and transferring a stolen motor vehicle 2x, aggravated fleeing an officer (felony) 2x, resisting/evading an officer 2x, receiving/transferring a stolen vehicle conspiracy, aggravated DWI, and tampering with evidence.

44.      I am unsure if MARTIN JARAMILLO has been convicted of any offenses which prohibits him from possessing a firearm.

45.      JUSTIN CROWLEY, aka: "GHOST": CROWLEY is a suspected BTL Gang member who has been arrested at least 5 times in New Mexico for auto burglary, conspiracy, larceny (over $250), DWI 2x, eluding a police officer by vehicle, possession of a controlled substance (cocaine), and receiving stolen property (receive)(firearm).

46.      I do not believe CROWLEY has been convicted of any offenses which prohibits him from possessing a firearm.

47.      ELTON WALKER, aka: "SPACE": ELTON WALKER is a BTL Gang member who has at least 13 arrests in New Mexico for unlawful carrying of a deadly weapon on school premises-felony, unlawful carrying of a deadly weapon, possession of drug paraphernalia, possession of marijuana, possession of a controlled substance, possession with intent to distribute conspiracy, trafficking by possession with intent to distribute, tampering with evidence, fail to comply with conditions of probation 2x, aggravated battery with a deadly weapon-felony, aggravated battery conspiracy, felon in possession of a firearm, aggravated battery shooting at a dwelling or occupied building, criminal damage to property $1,000 or more, probation violation 2x, DWI, motor vehicle theft, possession of a controlled substance (felony), receiving/transferring stolen motor vehicles, and firearm enhancement.

48.      Upon reviewing the New Mexico online secure court case information, WALKER has been convicted of the following offense which prohibits him from possessing a firearm: Possession of a Controlled Substance (Felony-Narcotic Drug), on August 29, 2018, in the Bernalillo County District

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Court, Case No. D-202-CR-2017-03877; Aggravated Battery with a Deadly Weapon Resulting in Great

Bodily Harm, on July 27, 1998, in the Bernalillo County District Court, Case No. D-202-CR-1998-

00957; and Unlawful Carrying of a Deadly Weapon on School Property, on July 14, 1993, in the

Bernalillo County District Court, Case No. D-202-CR-1992-01854.

49.    DAVID ALARID, aka: "ZACH": ALARID is a BTL associate who has at least six (6) arrests in

New Mexico and California for intimidating a witness, threaten crime with intent to terrorize, battery on

a non-cohabitant former spouse, inflict corporal injury on spouse, obstructing public officer, false

imprisonment, battery on a household member, DWI 2x, and aggravated DWI.

50.    I have reviewed ALARID's NCIC criminal history and believe that he is prohibited from

possessing a firearm based on a felony conviction of Inflicting Corporal Injury on a Spouse and False

Imprisonment, with a disposition date of October 29, 1999, in the Butte County Superior Court in

California, Case No. C9941896.

51.    STEVEN GOMEZ, aka: "SCRAPPY": STEVEN GOMEZ is a BTL Gang member who has at

least 35 arrests in New Mexico for concealing identity 2x, possession of a controlled substance

(marijuana)(misdemeanor), forgery of a prescription, conspiracy to commit forgery of a prescription,

burglary, contributing to the delinquency of a minor, burglary, eluding an officer, failure to appear 3x,

probation/parole violation, DWI, conspiracy criminal sexual penetration in commission of another

felony (2nd degree), false imprisonment, criminal damage to property, burglary (auto/commercial),

possession of burglary tools, conspiracy burglary, larceny, evading an officer, kidnapping (physical

injury and/or sexual offense committed) 2x, criminal sexual penetration (personal injury) 2x, conspiracy

to commit criminal sexual penetration 2x, bribery of a witness (threats-bribes reporting) 2x, probation

violation, burglary (dwelling house) 2x, tampering with evidence – attempt 3x, larceny (over $500 but

not more than $2,500) 6x, resisting/evading or obstructing an officer (arrest) 2x, shoplifting ($250 or

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

less), failure to appear 2x, shoplifting (over $250 but not more than $500), tampering with evidence, possession of a controlled substance (felony) 4x, failure to comply with specific requirements 4x, failure to appear on a felony charge 8x, burglary (commercial) – attempt, burglary (dwelling house) 2x, possession of drug paraphernalia, receiving/transferring stolen motor vehicles (1st offense) 2x, receiving stolen property – receive (over $500 but not more than $2,500) 2x, use or possession of drug paraphernalia 2x, receiving/transferring stolen motor vehicles (1st offense) – conspiracy, receiving stolen property – retain (over $500 but not more than $2,500), receiving stolen property – retain (over $500 but not more than $2,500) – conspiracy, breaking and entering, theft of identity, theft of identity – conspiracy, aggravated fleeing a law enforcement officer, burglary (commercial) – conspiracy, resisting/evading or obstructing an officer (arrest), armed robbery 2x, burglary (dwelling house), larceny (over $2,500), shoplifting (over $2,500), shoplifting (over $500 but not more than $2,500), and shoplifting (over $2,500) – conspiracy.

52.      Upon reviewing the New Mexico online secure court case information, STEVEN GOMEZ is prohibited from possessing a firearm because he has been found mentally incompetent in the following cases: Shoplifting 2x and Conspiracy to Commit Shoplifting; deemed incompetent on October 18, 2023, in the Bernalillo County District Court, Case No. D-202-CR-2023-01747; Attempt to Commit a Felony, to wit: Robbery; Conspiracy to Commit Robbery; and Criminal Damage to Property; deemed incompetent on June 16, 2021, in the Bernalillo County District Court, Case No. D-202-CR-2020-00743; Armed Robbery 2x and Conspiracy to Commit Armed Robbery; deemed incompetent on June 16, 2021, in the Bernalillo County District Court, Case No. D-202-CR-2020-00543; Residential Burglary; Aggravated Fleeing a Law Enforcement Officer; Possession of a Controlled Substance; Leaving the Scene of an Accident; Driving while License Revoked – DWI Related; Use or Possession of Drug Paraphernalia; deemed incompetent on July 1, 2019, in the Bernalillo County District Court, Case No.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

D-202-CR-2019-00819; Receiving Stolen Property – Retain; deemed incompetent on December 20, 2018, in the Bernalillo County District Court, Case No D-202-CR-2018-02639; Theft of Identity and Forgery – Make or Alter 3x; deemed incompetent on December 20, 2018, in the Bernalillo County District Court, Case No. D-202-CR-2018-01897; Receiving or Transferring Stolen Motor Vehicles; Conspiracy to Commit Receiving/Transferring Stolen Motor Vehicles; Shoplifting; Conspiracy to Commit Shoplifting; Receiving Stolen Property – Retain; Conspiracy to Commit Receiving Stolen Property – Retain; deemed incompetent on July 13, 2017, in the Bernalillo County District Court, Case No. D-202-CR-2016-02904; Shoplifting 2x; deemed incompetent on July 12, 2017, in the Bernalillo County District Court, Case No. D-202-CR-2012-00271; and Possession of a Controlled Substance; Tampering with Evidence; Use or Possession of Drug Paraphernalia; and Resisting/Evading or Obstructing an Officer; deemed incompetent on July 14, 2017, in the Bernalillo County District Court, Case No. D-202-CR-2011-05988.

53.     CHARLES GOMEZ, aka: "CUCU": CHARLES GOMEZ is a BTL associate who has at least 20 arrests in New Mexico for possession of a firearm by a prohibited person, Hobbs act robbery, possession/brandish a firearm in furtherance of a violent crime, bringing contraband into jail, criminal damage to property, robbery, burglary (automobile), drug/narcotic violation 4x, DUI, domestic violence, resisting/evading/or obstructing an officer 2x, concealing identity 2x, burglary (dwelling house), possession of a controlled substance (felony), shoplifting (over $500 but not more than $2,500), failure to appear on a felony charge, aggravated assault (deadly weapon), possession of a firearm or a destructive device by a felon, resisting/evading/or obstructing an officer (arrest), , felon in possession of ammunition, and possession of a controlled substance (felony) – attempt.

54.     Upon reviewing the New Mexico online secure court case information, CHARLES GOMEZ has been convicted of the following offense which prohibits him from possessing a firearm: Shoplifting and

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Burglary, on July 24, 2018, in the Bernalillo County District Court, Case No. D-202-CR-2017-02734.

55.    ERIC GOMEZ, aka: "INDIO": ERIC GOMEZ is a BTL associate who has at least 14 arrests in New Mexico for possession of a controlled substance (felony), probation violation 2x, concealing identity, burglary (dwelling house), possession of a firearm or destructive device by a felon, aggravated burglary (deadly weapon) conspiracy, tampering with evidence, aggravated burglary (deadly weapon), larceny ($250 or less), theft of a credit card 2x, encouraging violation of probation, parole or bail, forgery, DWI, forgery of a prescription, and conspiracy to commit forgery of a prescription.

56.    Upon reviewing the New Mexico online secure court case information, ERIC GOMEZ has been convicted of the following offense which prohibits him from possessing a firearm: Residential Burglary, on May 22, 2019, in the Bernalillo County District Court, Case No. D-202-CR-2018-02621; and Theft of a Credit Card, on August 14, 2014, in the Bernalillo County District Court, Case No. D-202-CR-2012-02944.

57.    JEREMIAH MARTINEZ, aka "CYCLONE": MARTINEZ is a BTL Gang member who has at least 21 arrests in New Mexico for trafficking a controlled substance 2x, conspiracy 2x, possession of drug paraphernalia, larceny, possession of drug paraphernalia, battery upon a peace officer (felony) 2x, failure to comply with conditions of probation 5x, robbery, DWI 2x, assault on a peace officer (aggravated) (felony), evading a police officer, battery on a peace officer (4 counts), trafficking a controlled substance by distribution, robbery armed with a deadly weapon, escape from jail inmate release program, probation violation, trafficking a controlled substance (cocaine), failure to comply with specific requirements, trafficking controlled substances (distribution) attempt (1st offense), armed robbery (2nd offense), armed robbery, burglary (dwelling house) 3x, burglary (dwelling house) – conspiracy, tampering with evidence 2x, tampering with evidence – conspiracy, larceny (over $500 but not more than $2,500), tampering with evidence – attempt, burglary (dwelling house) – attempt,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

resisting/evading or obstructing an officer (arrest), aggravated assault (deadly weapon), aggravated assault (deadly weapon) – conspiracy, possession of a controlled substance (felony), parole violation, and probation violation.

58.     Upon reviewing the New Mexico online secure court case information, MARTINEZ has been convicted of the following offense which prohibits him from possessing a firearm: Battery Upon a Peace Officer and Possession of a Controlled Substance (Felony – Narcotic Drug), on October 19, 2016, in the Bernalillo County District Court, Case No. D-202-CR-2016-01295; Escape from Inmate Release Program, on September 18, 2001, in the Bernalillo County District Court, Case No. D-202-CR-2001-01306; and Trafficking Controlled Substance by Distribution, on December 13, 1999, in the Bernalillo County District Court, Case No. D-202-CR-1999-00452.

59.     <u>STEVO PAULINO, aka: "HEAVEN"</u>: PAULINO is a BTL associate who has at least 21 arrests in New Mexico for aggravated battery (misdemeanor), contributing to the delinquency of a minor, possession of a controlled substance (misdemeanor), possession of marijuana or synthetic cannabinoids, receiving stolen property (dispose)(firearm) – conspiracy, burglary (dwelling house), criminal trespass (posted), use or possession of drug paraphernalia 2x, possession of a controlled substance (felony) 5x, receiving stolen property (dispose)(firearm), receiving stolen property (receive)(firearm) 2x, tampering with evidence 3x, patronizing prostitutes, bringing contraband into a jail, resisting/evading or obstructing an officer (service or process), burglary (automotive), unlawful taking of a motor vehicle (1st offense), shoplifting ($250 or less), criminal damage to property, resisting/evading or obstructing an officer (arrest) 2x, and possession of a firearm by a convicted felon 2x.

60.     Upon reviewing the New Mexico online secure court case information I have been unable to locate a case wherein PAULINO was convicted of an offense which prohibits him from possessing a firearm. However, based on the fact that PAULINO has been charged with possession of a firearm by a

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

convicted felon and he has records in his criminal history of being arrested by NM probation and parole division, I believe he may have been convicted of a crime which prohibits him from possessing a firearm.

61.     According to the New Mexico online court records website, on November 21, 2023, the Bernalillo County Metropolitan Court issued an arrest warrant for PAULINO charging him with one count of Disorderly Conduct, Case No. T-4-CR-2023-005287.

62.     PAULINO has not been arrested on the above referenced warrant.

### BACKGROUND: THE BREW TOWN LOCOS GANG

63.     The BTL is a predominately Hispanic, multigenerational, gang founded in the late 1970s in the North Valley area of Albuquerque, New Mexico. The BTL Gang presently claims the territory between Montano Road to the north, Interstate 40 (I-40) to the south, 12th Street  Northwest to the west and Edith Boulevard to the east.

64.     Over the years, the BTL expanded throughout New Mexico to include cliques in Grants, New Mexico, and Taos, New Mexico. Active and former BTL Gang members, as well as gang investigators, have described the BTL Gang as a powerful "old school" Albuquerque gang with a reputation for having cartel connections and an arsenal of firearms.

65.     I am aware BTL Gang members identify themselves with distinct symbols, letters, words and numbers, to include: an eight-legged spider, the letters "BTL," "BTS," "BT," or "BTSL," the words "Brew Town Locos," "Brew Town Spiders," "Brew Town Spider Locos," "Brew," and "Brew Town." BTL Gang members also utilize the New Mexico Zia symbol and numbers 107, which correspond to the last three digits of the Zip Code 87107, which covers the general area the BTL operate within. BTL Gang members frequently display these symbols, numbers, letters, words, as well as their gang monikers in their tattoos, graffiti, social media photos, drawings, and on clothing as a way of displaying their affiliation, loyalty, and commitment to the BTL. I have included photographs of BTL Gang tattoos,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

graffiti, and drawings below.



**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**



66.    The BTL strives to have a reputation for being strong and powerful and must maintain its membership to continue functioning as an organization on the streets. If the BTL is perceived as being weak, then rival gangs could challenge and assault its members and take over its territory. This could cause the BTL to lose market share necessary to mainlining income, which could in turn cause the BTL

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

to lose membership and eventually dissolve. If the BTL maintains a large membership and a reputation for being dominant, rival gangs may think twice before they challenge it. Similarly, victims and witnesses may think twice about assisting authorities with any prosecution attempt against the gang. FBI case agents have encountered potential witnesses and victims who were too afraid to speak with law enforcement and much less willing to testify against BTL Gang members. A member of the BTL is expected to seek out and beat, stab, or shoot rival gang members and informants.

67.     BTL Gang members frequently commit "branded" criminal acts, in other words, they commit crimes in the name of the gang. Examples of branded criminal acts include: gang members shouting references to BTL before or during a crime; gang members demanding drugs, or property because of their membership; and gang members killing or attempting to kill members of rival gangs or individuals who BTL Gang members feel have disrespected them.

68.     Many BTL members have told me that in state prison, BTL members associate with the SNM or Burqueños, and in federal prison, BTL members associate with the Sureños.

69.     Weapons, to include blunt force and edged weapons, firearms, and ammunition are important tools of the trade and instrumentalities of the BTL.

70.     BTL prospective gang members must be ranked into the gang by senior members of the BTL, or they may be "born in" via a family member. Members who have cooperated with law enforcement are removed from the gang through violent actions, such as beatings, robbery, and murder. Membership is otherwise for life.

71.     In January 2023, a video was posted online chronicling the history of the BTL Gang. The video is almost 15 minutes long and focuses on the violence and modus operandi of the BTL. The video is titled Albuquerque Gangland Ep.10 Brew Town Locos BTSL.[4]

---

[4] https://www.youtube.com/watch?v=wejSbtmHXDs

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

72.     As described in detail below, I believe the facts set forth in this affidavit provide probable cause to believe that DAVID JARAMILLO, aka: "SPIDER;" REYNALDO JARAMILLO, aka: "RAY;" CHRISTOPHER PEREZ, aka: "LIL CHUCO;" FELIX SILVA, aka: "GATO;" MARTIN JARAMILLO, aka: "TEENER;" JUSTIN CROWLEY, aka: "GHOST;" ELTON WALKER, aka: "SPACE;" DAVID ALARID, aka: "ZACH;" STEVEN GOMEZ, aka: "SCRAPPY;" CHARLES GOMEZ, aka: "CUCU;" ERIC GOMEZ, aka: "INDIO;" JEREMIAH MARTINEZ, aka: "CYCLONE;" and STEVO PAULINO, aka: "HEAVEN;" are involved in a conspiracy to commit the Target Offenses.

73.     Where I refer to conversations herein, they are related in substance and, in part, based on conversations between fellow agents, task force officers, other law enforcement personnel, or confidential human sources that assisted law enforcement. Any observations referenced herein that I did not personally witness were relayed to me in oral and/or written reports by agents of the FBI or other agencies. All figures, times, and calculations set forth herein are approximate. Unless otherwise specified, weights of controlled substances are approximate and are based on gross measurements.

74.     In the paragraphs that follow, I have detailed several controlled drug buys that occurred utilizing one or more CHS. The amounts of US Currency utilized to purchase the controlled substances and the amount of controlled substances are known to me, however I have omitted the amounts herein in an attempt to protect the identity of the CHS. In each of the controlled buys, the following protocols were exercised:

   a.   The CHS arranged the controlled buy with the Target Subject via cellular telephone contact (call, text, or a cellular enabled application such as Facebook, SnapChat, etc.) or in person;

   b.   The CHS was briefed on the operational objectives and safety considerations;

   c.   The CHS's person and vehicle (if a vehicle was used) were searched prior to meeting with the Target Subject;

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

    d.  The CHS was provided with official government funds to be utilized during the buy. If the CHS had any personal funds on them, agents secured it until after the buy;

    e.  The CHS was equipped with a covert audio/video covert recording device to utilize during the controlled buy, which was remotely controlled by an agent;

    f.  Surveillance was maintained on the CHS before, during, and after the controlled buy;

    g.  Agents met with the CHS following the controlled buy and recovered the drug evidence and recording device; and

    h.  The CHS's person and vehicle (if a vehicle was used) were searched for contraband.

### THE BTL INVESTIGATION TO DATE

75.    In approximately April 2020, FBI agents began looking into the activities of the BTL and opened a full investigation the following month. The investigation was predicated on CHS reporting that BTL Gang members were armed and trafficking cocaine by the brick.

76.    In September 2020, a BCSO deputy conducted a traffic stop on BTL Gang member Daniel Silva,[5] aka: "Jinx," and another BTL member in the BTL controlled area. The other BTL member advised Deputies that they were with Daniel Silva's brother earlier in the day. Deputies located a stolen firearm and various controlled substances, to include heroin, inside the car. Daniel Silva had more than $2,000 on his person.

77.    In September 2020, two FBI Special Weapons and Tactics (SWAT) teams executed search warrants on two BTL houses. Approximately a dozen BTL Gang members and associates were detained on the premises. Agents located and seized distribution quantities of fentanyl M-30 tablets, cocaine, drug packaging material, six firearms, including a stolen firearm, high-capacity magazines, hundreds of rounds of ammunition, three ballistic vests, numerous cell phones, drug paraphernalia, and nearly $8,000

---

[5] Daniel Silva is the brother of Target Subject FELIX SILVA, aka: "GATO."

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

in drug proceeds.

78.     During the above referenced FBI search warrant, Target Subject CHRISTOPHER PEREZ, aka: "LIL CHUCO," ran out of one of the residences and threw a stolen pistol on top of a garage. BTL Gang members Christopher Perez, aka: "Chuco," Sanjauan Aragon, aka: "Spooky," was found to be in possession of firearm parts and ammunition. Elizabeth Perez, aka: "Brew Town Queen," and Target Subject CHRISTOPHER PEREZ, aka: "LIL CHUCO," were arrested and later convicted in federal court for drug and gun charges. Elizabeth Perez is the mother of Christopher Perez, aka: "Chuco," who is the father of CHRISTOPHER PEREZ, aka: "LIL CHUCO."

79.     In October 2020, BTL Gang member Dominic Soto, aka: "Shadow," was arrested on an outstanding FBI warrant and found to be in possession of a firearm. Soto said he carried the pistol because he was a gang member and needed it for protection. Soto was later convicted in federal court of felon in possession of a firearm and ammunition.

80.     In October 2020, BCSO deputies executed a search warrant on BTL Gang member Nathon Cotinola, aka: "Bones," his residence, and his vehicle. Deputies searched his vehicle and located approximately 1.5 pounds of methamphetamine and a pistol. FBI case agents subsequently obtained a federal arrest warrant on Cotinola charging him with possession with intent to distribute methamphetamine, armed drug trafficking, and possession of a firearm and ammunition by a convicted felon.

81.     In October 2020, BTL Gang member Daniel Silva, aka: "Jinx," was arrested on an outstanding federal arrest warrant pursuant to the September 2020 traffic stop. Daniel Silva was later convicted in federal court of felon in possession of a firearm.

82.     In November 2020, FBI case agents utilized an undercover agent to conduct a controlled purchase of approximately 4,000 fentanyl M30 tablets from BTL drug supplier and suspected cartel member,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Jorge Ochoa-Perez.

83.     In November 2020, BTL Gang member Sanjauan Aragon, aka: "Spooky," was detained during a police investigation of an apparent vehicle larceny. A firearm was found on Aragon's person. Aragon was arrested for possession of a firearm by a prohibited person. FBI case agents subsequently arrested Aragon, who was later convicted in federal court of being a prohibited person in possession of a firearm and ammunition.

84.     In January 2021, the FBI and DEA case agents executed search and arrest warrants at the residence of BTL drug source of supply and suspected cartel member Jorge Ochoa-Perez and his stash house. Agents arrested Ochoa-Perez and another male, located and seized $115,000 in US currency, two firearms, two vehicles, cell phones, drug ledgers, 406 grams of cocaine, 348 grams of black tar heroin, and 32 grams of fentanyl. Ochoa-Perez was later convicted in federal court of possession with intent to distribute heroin.

85.     In March 2021, Nathon Cotinola, aka: "Bones," was arrested on a pretrial violation. When Cotinola was arrested he was in possession of a pistol, ammunition, and methamphetamine. Cotinola was subsequently convicted in federal court for possession with intent to distribute methamphetamine and possession of a firearm during and in relation to a drug trafficking crime.

86.     In April 2021, around midnight, a BCSO patrol deputy encountered suspected BTL member Eusebio Devargas on a bicycle in the BTL controlled territory, in the vicinity of Subject Premises 6. Devargas initially tried to evade the deputy but was subsequently contacted a short distance later. Devargas told the deputy he had a pistol on his person and he was detained. Deputies queried Devargas and learned he had several prior felony convictions, to include a homicide conviction. FBI case agents later obtained an arrest warrant charging Devargas with possession of a firearm and ammunition by a convicted felon.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

87.    In April and May 2021, CHS-1 and CHS-2 advised VGTF agents that Adam Mann, aka: "Pacman," was a well-respected BTL Gang member, they considered to be OG.[6] Mann was a drug trafficker who sold multi ounces of shards,[7] black,[8] and blues.[9] CHS-1 also believed that within the last year someone broke into Mann's house and stole three kilograms of black and $68,000.

88.    In May 2021, case agents interviewed CHS-2 about the BTL. CHS-2 advised VGTF agents that they had been a member of the BTL Gang for approximately 20 years. CHS-2 confirmed the BTL were primarily a drug dealing organization that protected their enterprise with firearms and violence. CHS-2 provided substantial information on the gang and several of the members, to include an eyewitness account of a 2017 cold-case homicide in which BTL Gang member Christopher Sena, aka: "Fresh," shot and killed Thomas Ramirez, a BTL associate, on the street within the BTL territory. CHS-2 advised that Sena shot and killed Ramirez because he had disrespected Sena.

89.    In April 2021, APD officers conducted a traffic stop on Frank Madrid, aka: "Benzo," and located a firearm, methamphetamine, heroin, and fentanyl on his person and in his vehicle. Madrid was arrested and later released. FBI case agents later obtained a warrant on Madrid charging him with possession of a firearm and ammunition by a convicted felon.

90.    In June 2021, the FBI executed seven (7) residential search and arrest warrants on BTL Gang members and associates. Agents located twenty (20) firearms, about three pounds of methamphetamine, heroin, loaded needles, distribution quantities of fentanyl M30 tablets, heroin, bulk U.S. Currency, a suppressor, extended and drum style magazines, and hundreds of rounds of ammunition. Frank Madrid,

---

[6]  OG means Original Gangster, a term used to describe an influential gang member who has been a gang member for a long time and directs others to do things often times for the common good of the Gang.

[7]  "Shards" is slang for methamphetamine.

[8]  "Black" is slang for heroin.

[9]  "Blues" is slang for blue in color tablets, stamped M30, that contain fentanyl.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

aka: "Benzo," and Eusebio Devargas were arrested on outstanding federal arrest warrants. Ednamay DeLarosa, Eusebio Devargas, and Sam Williams were later convicted in federal court of possession of a firearm and ammunition by a convicted felon. David Chavez, aka: "Flaco," was later charged in federal court with felon in possession of a firearm and ammunition, he remains in custody as his case is still pending. Orlando Roybal, aka: "Orlie," was later charged in federal court with possession with intent to distribute methamphetamine and possession of a firearm and ammunition by a convicted felon, he remains in custody as his case is still pending.  Madrid was placed on pre-trial release.

91.     In June 2021, VGTF agents received information that Kimberly Lopez, aka: "La Nenna," was suspected to have cartel connections and involved in a conspiracy to introduce drugs into a NM prison, to a BTL Gang member.

92.     In September 2021, FBI case agents utilized an undercover employee to conduct two controlled purchases of methamphetamine, from Kimberly Lopez, aka: "La Nenna." FBI case agents subsequently arrested LOPEZ; who was later convicted in federal court of distributing methamphetamine.

93.     In November 2021, BTL Gang member Christopher Sena, aka: "Fresh," was arrested for the murder of Thomas Ramirez.

94.     In June 2022, Mann's residence caught on fire and was heavily damaged. CHS-1 advised VGTF agents that after Mann's house burned, Mann went to the residence of fellow BTL Gang member, drug trafficker, and Target Subject MARTIN JARAMILLO, a.k.a. "TEENER." Mann was driving an off road vehicle and was in possession of $10,000 cash. Mann stated that he burned his house while working on his Hummer. Mann asked MARTIN JARAMILLO for $500 worth of drugs, which MARTIN JARAMILLO provided to Mann.

95.     In June 2022, CHS-3 advised VGTF Agents that they were present when individuals they

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

described as cartel members dropped off of about 6 boats,[10] heroin and a huge bag of meth to BTL drug source of supply Jerry Campos. The cartel members were armed with gold plated pistols. The deal happened at Jerry Campos's house in the heart of the BTL territory.

96.     In July 2022, FBI case agents arrested Adam Mann for possession of a firearm and ammunition by a convicted felon. During Mann's arrest, approximately $301,000 in partially burned drug proceeds, along with a small amount of heroin, were located and seized. Mann was subsequently convicted of possession of heroin.

97.     In August 2022, VGTF agents executed a search warrant on Jerry Campos and his vehicle in the BTL controlled territory. Agents located over six (6) ounces of methamphetamine and 61 grams of fentanyl M30 tablets in his pockets. Jerry Campos was arrested and charged with possession with intent to distribute methamphetamine and fentanyl.

98.     In September 2022, Jeffrey Campbell was found shot to death in Northeast Albuquerque. The APD investigated the murder and learned that it was a drug dispute between Frank Madrid, aka: "Benzo," and Jeffrey Campbell.

99.     In September 2022, VGTF, DEA, BCSO, and NMSP agents executed 15 search warrants on Sureños[11] gang members in Albuquerque[12]; one of the subjects was Thomas Jaramillo, aka: "Casper." The search warrants were for RICO and VICAR murder. Agents located Thomas Jaramillo at his residence and located a firearm in his vehicle.

100.    In November 2022, Frank Madrid was arrested for the murder of Jeffrey Campbell in September

---

[10] A "boat" is slang for 1,000 fentanyl M30 tablets.

[11] I have spoken with several BTL Gang members who were either self-admitted Sureños members or associates.

[12] Agents seized 24 firearms, approximately 1 million fentanyl M-30 tablets, 140 pounds of methamphetamine, and over 2 million in US Currency from Jesse Young, aka "Lobo." Young was charged with possession with intent to distribute fentanyl and methamphetamine, as well as possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm and ammunition..

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

2022. Madrid was subsequently indicted for charges of first degree murder, possession of a firearm by a felon, and possession of a stolen firearm. Both the state case and the federal case, stemming from the June 2021 FBI search warrant, against Madrid are still pending.

101.   In November 2022, VGTF agents executed search warrants at the residence of BTL drug source of supply Elliott Peralta, aka: "Cash," for evidence of drug trafficking and illegal firearms possession. Upon executing the search warrant, Peralta fled out the back door and slipped through the law enforcement perimeter. Agents located and arrested a federal fugitive hiding in a secret room disguised as a cabinet. Agents seized about one (1) kilogram of methamphetamine, 100 grams of fentanyl M30 tablets, and two firearms. FBI case agents subsequently obtained warrants charging Peralta with possession with intent to distribute methamphetamine and fentanyl, armed drug trafficking, conspiracy to PWITD, and possession of a firearm and ammunition by a convicted felon.

102.   In November 2022, VGTF agents attempted a knock and talk at the hotel room of BTL drug source of supply and suspected cartel associate Gerardo Olaiz, in Albuquerque, NM. Upon agents knocking on the door, agents suspected Olaiz was destroying drug evidence in the bathroom. Agents subsequently made entry to the hotel room detaining Olaiz, who was soaking wet, secured the room and obtained a search warrant. Agents located wet drug packaging material consistent with about a kilogram of cocaine and a firearm.

103.   In January 2023, VGTF agents obtained a search warrant on the residence and storage units belonging to BTL firearms and fentanyl supplier Leonard Lucero, aka: "Leño." Agents seized 51 firearms, several thousand rounds of ammunition, dozens of firearm magazines, items with BTL Gang drawings, truckloads of brand new stolen power tools, generators, pressure washers, air compressors, appliances, and approximately 300 bottles of liquor; worth approximately $100,000. Lucero was not present during the search and FBI case agents obtained a warrant charging him with possession of a

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

firearm by a convicted felon.

104.    In February 2023, FBI SWAT and Albuquerque DEA agents executed four search warrants at BTL houses for VICAR murder, evidence of drug trafficking, and firearms violations. The warrant was based on information that a BTL Gang member murdered Victim-1, the identity of which is currently unknown, at one of the subject premises. The murder was over the quality of drugs which Victim-1 purchased from a BTL associate. Agents located blood evidence, fentanyl M30 tablets, and BTL drawings. The VICAR murder investigation is on-going.

105.    In February 2023, BTL associate Eric Salazar, aka: "Tiny," shot and killed Patrick Gallegos at Subject Premises 1. Gallegos was known to clean and keep troublemakers off the property. Gallegos had disrespected Salazar, the two then got into an argument which eventually turned physical. Salazar pulled a pistol, shot Gallegos, and left the scene. The prosecutor's office determined the murder was self-defense, no charges were filed.

106.    In March 2023, officers received a call for an individual (later identified as Salazar) who was down and out in a vehicle in the BTL controlled territory, officers located and attempted to contact Salazar. Salazar fled police and hid in an unsuspecting citizen's garage, officers located Salazar and a firearm in the garage. Officers arrested Salazar on charges of felon in possession of a firearm, aggravated fleeing of a law enforcement officer, possession of methamphetamine, possession of a controlled substance, and possession of drug paraphernalia. Salazar was subsequently released pending trial, he later absconded, and a warrant was issued for his arrest.

107.    In May 2023, the Albuquerque FBI SWAT team arrested fugitive Eric Salazar, aka: "Tiny" at a residence located within 450 feet from Subject Premises 1. At the time of Salazar's arrest, he was in possession of a short barrel shotgun with an obliterated serial number. FBI case agents charged Salazar with two counts of possession of a firearm by a convicted felon and possession of a firearm not registered

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

in the national firearms registration and transfer record. Salazar was subsequently released pending trial and violated his pretrial release conditions; a warrant was issued for his arrest.

108.     In May 2023, FBI case agents received evidence indicating Gerardo Olaiz possessed the firearm located in his hotel room in November 2022. FBI case agents obtained a warrant for Olaiz for possession of a firearm and ammunition by a convicted felon.

109.     In June 2023, VGTF agents obtained and executed a search warrant at the residence of a BTL drug source of supply in the North Valley of Albuquerque. Upon executing the search warrant, agents found the drug supplier  attempting to flush fentanyl M30 tablets down the toilet. The male was subsequently detained; agents seized six (6) firearms and approximately 8,000 fentanyl M30 tablets from the residence.

110.     In July 2023, the USMS arrested Elliott Peralta, aka: "Cash," on the warrant FBI case agents obtained following the seizure of two firearms, one kilogram of methamphetamine, and over 100 grams of fentanyl M30 tablets from his residence in November 2022.

111.     In July 2023, BTL drug source of supply Gerardo Olaiz was arrested in Phoenix, Arizona, on the warrant FBI case agents obtained in May 2023, for possession of a firearm and ammunition by a convicted felon. Olaiz' federal court federal case remains pending.

112.     In July 2023, BTL member Jose Martinez, aka: "Bologna," aka: "Joe," shot and killed Russell Werner, who was talking "shit" to Martinez. After Martinez shot Werner, he threatened others who were present to help him cover up the murder, remove the spent shell casing, wrap the body in a rug, and yelled, "I will kill you motherfucking snitches." This occurred within the BTL controlled territory and APD investigated the murder, subsequently charging and arresting the suspect in northern New Mexico.

113.     In July 2023, BTL member Christopher Sena, aka: "Fresh," was convicted of second degree murder for the 2017 murder of Thomas Ramirez.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

114.    In August 2023, BTL drug source of supply Jerry Campos was murdered at his house in Albuquerque, NM. According to witness reports, a vehicle pulled up to the residence and two males exited the vehicle subsequently shooting Jerry Campos to death. It is important to note that Jerry Campos was on pretrial release and living at a residence which was not well known, in the South Valley of Albuquerque. Around the time of Jerry Campos's murder, someone broke into his well-known house in the BTL controlled territory and shot his dog in the leg. Detectives later received information that gang members Carlos Saucedo, aka: "Smash," and Thomas Jaramillo, aka: "Casper," may have been involved in the murder of Jerry Campos. The murder investigation is on-going.

115.    In August 2023, VGTF agents learned that Juan Delarosa, a subject wanted for murder, was hiding out at a house within the BTL controlled territory. NMSP agents located and arrested Delarosa.

116.    In August 2023, Carlos Saucedo, aka: "Smash," was arrested by the USMS on an outstanding domestic violence warrant. As agents closed in on Saucedo, to arrest him on the outstanding warrant, he appeared to notice the unmarked law enforcement vehicles. Agents observed Saucedo stand up, reach his right hand into his waistline, and retrieve a black firearm, later identified as a Glock model 43 9mm pistol bearing serial number BGKD420. Saucedo then threw the Glock 43 pistol into the bushes behind him and was subsequently taken into custody. Immediately upon being taken into custody, agents observed the Glock 43 pistol in the bushes, in the same area where he threw it. Agents retrieved the Glock 43 pistol, which was loaded with five 9mm rounds, one being loaded in the chamber. FBI case agents later arrested Saucedo and charged him with felon in possession of a firearm and ammunition.

117.    In October 2023, FBI case agents obtained an arrest warrant and subsequently arrested Thomas Jaramillo, aka: "Casper," charging him with one violation of felon in possession of a firearm and ammunition stemming from the September 2022, search of his property.

118.    In December 2023, Eric Salazar, aka: "Tiny," was arrested on the warrant FBI case agents

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

obtained charging him with possession of a firearm and ammunition by a convicted felon and possession of a short barrel shotgun stemming from the March 2023 police pursuit and May 2023 search warrant at Subject Premises 2.

119.    In December 2023, BCSO deputies located BTL Gang member Anthony Ybarra, aka: "Gangster," asleep in a vehicle on the roadway in the BTL controlled territory. Deputies arrested Ybarra on an outstanding felony warrant, which stemmed from a federal firearms conviction, and located over $5,000 in US Currency, three firearms, 1.6 ounces of methamphetamine, 4 ounces of fentanyl M30 tablets, and a small amount of heroin on his person and vehicle.

120.    In December 2023, Kenneth Campos, aka: "Fidget," was arrested. At the time of his arrest 13 firearms were located in his residence. Agents later learned that Kenneth Campos was a True City Kings (TCK) Gang member.

121.    In January 2024, BTL firearms supplier, drug source of supply, and fugitive Leonard Lucero, aka: "Leño," was arrested by the USMS on the outstanding felon in possession of a firearm and ammunition warrant obtained by VGTF agents following the seizure of 51 firearms and over $100,000 worth of stolen merchandise in January of 2023.

122.    In January 2024, the FBI Albuquerque SWAT team assisted the VGTF in executing a search warrant at the residence of TCK Gang member Jose Gonzalez, aka: "Cochino." Agents seized six (6) firearms, including a short barrel machinegun, $34,660 in US Currency, fentanyl M30 tablets, and cocaine.

### THE CURRENT INVESTIGATION

### SUBJECT PREMISES 1

123.    Within the last four months VGTF agents have learned about a conspiracy between BTL Gang members DAVID JARAMILLO, aka: "SPIDER;" REYNALDO JARAMILLO, aka: "RAY;"

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

CHRISTOPHER PEREZ, aka: "LIL CHUCO;" MARTIN JARAMILLO, aka: "TEENER;" and FELIX SILVA, aka: "GATO," to possess firearms and traffic various controlled substances from Subject Premises 1.

124.    Within the last four months, VGTF agents have also learned that fugitives CHRISTOPHER PEREZ, aka: "LIL CHUCO," was hiding out at Subject Premises 1 and Subject Premises 2.

125.    In March 2023, BTL associate Eric Salazar, aka: "Tiny," shot and killed Patrick Gallegos at Subject Premises 1. VGTF agents later obtained an arrest warrant on Salazar and, based on a tip from CHS-1 and CHS-4, agents located Salazar hiding out at a residence within 450 feet of Subject Premises 1. When agents located Salazar, he was in possession of a short barrel shotgun with an obliterated serial number.

126.    Within the last three months, CHS-1 advised VGTF agents the following:

a.  BTL Gang member DAVID JARAMILLO, aka: "SPIDER," and his dad REYNALDO JARAMILLO, aka: "RAY;" sold fentanyl and methamphetamine from their residence, Subject Premises 1.

b.  CHS-1 knew that DAVID and REYNALDO had been to prison.

c.  Within the last seven weeks, CHS-1 had observed firearms, fentanyl, and methamphetamine at Subject Premises 1.

d.  Before his arrest, BTL Gang member Anthony Ybarra, aka: "Gangster," had supplied Target Subjects DAVID JARAMILLO and REYNALDO JARAMILLO with blues and clear at Subject Premises 1.

e.  Within the last two months and following the arrest of Ybarra, several individuals that CHS-

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

1 described as cartel connected committed a drug rip[13] at Subject Premises 1. The individuals tied up everyone that was at Subject Premises 1. The individuals then stole all of the money and drugs from Subject Premises 1. CHS-1 described the incident as being chaotic and advised that the individuals wore masks and were walking around in the street, with fully automatic rifles during the drug rip.

    f.   BTL Gang member CHRISTOPHER PEREZ, aka: "LIL CHUCO," was aware of his status as a fugitive and was hiding out at Subject Premises 1. CHS-1 also knew that PEREZ was trafficking blues from the subject premises and he had recently acquired a stolen a firearm.

    g.   BTL Gang member MARTIN JARAMILLO, aka: "TEENER," was staying at Subject Premises 1, where he trafficked blues.

    h.   Within the last five weeks, BTL Gang member FELIX SILVA, aka: "GATO," had moved into  Subject Premises 1, where he was security and an enforcer for the BTL Gang.

127.   Within the last two months, CHS-4 advised VGTF agents the following:

    a.   BTL Gang members DAVID JARAMILLO, aka: "SPIDER," and his dad, suspected BTL member, REYNALDO JARAMILLO, aka: "RAY;" lived at and trafficked drugs out of Subject Premises 1. DAVID sold blues, clear, and crack cocaine; and REYNALDO clear.

    b.   REYNALDO ran the drug trafficking operations at Subject Premises 1.

    c.   CHS-4 believed that REYNALDO and DAVID were convicted felons and they possessed firearms at Subject Premises 1.

    d.   CHRISTOPHER PEREZ, aka: "LIL CHUCO," was a fugitive and CHS-4 believed he was hiding out at Subject Premises 1. CHS-4 knew PEREZ was always armed and trafficked

---

[13] A "drug rip" is a robbery of drugs from a distributor or supplier. Drug rips are a common means of income for criminal enterprises because the suspect knows that the victim will likely not report the incident to police, as that would implicate the victim of illegal drug possession.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

blues.

e.  BTL member FELIX SILVA, aka: "GATO," was also living at Subject Premises 1, where he was security and an enforcer for the BTL.

128.   In December 2023, VGTF surveillance agents observed BTL Gang graffiti on a block wall in front of the Subject Premises 1. I believe the graffiti reads, "BTL Lil Chuco BTL." Photo attached below.



December 2023 VGTF surveillance photo of BTL gang graffiti in front of Subject Premises 1.

129.   In January 2024, CHS-5 advised agents the following:

a.  Within the last year, CHS-5 had been to Subject Premises 1 one time and had observed blues and firearms at the subject premises. DAVID JARAMILLO, aka: "SPIDER," and his dad REYNALDO JARAMILLO, aka: "RAY;" sold blues from Subject Premises 1.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

b.  CHS-5 believed that both DAVID and REYNALDO had been to prison.

c.  BTL Gang member FELIX SILVA, aka: "GATO," was also living at Subject Premises 1, and CHS-5 knew that SILVA was an enforcer and intimidating gang member who would not hesitate to use violence.

d.  CHS-5 advised agents that although they had been to Subject Premises 1 in the past, they were too scared to go to back because the subjects there were violent, intimidating, and CHS-5 feared retaliation if it were found out that they were cooperating with law enforcement.

130.   In January 2024, another BTL member's house was the target of a shooting. A male shot at and hit the house about a dozen times, unfortunately during the shooting, a male was outside cleaning up the property and was struck by gunfire. The victim was taken to the hospital, APD continues to investigate the shooting.

131.   Following the above shooting, CHS-6 advised VGTF agents that they believed a gang member named SPIDER executed the shooting. CHS-6 believed that SPIDER was a main gang member, leader, and OG gang member who ran the north valley.

132.   Within the last week, CHS-2 advised VGTF agents the following:

a.  CHRISTOPHER PEREZ, aka: "LIL CHUCO," was staying at Subject Premises 1.

b.  Within the last three weeks, CHS-2 had been to Subject Premises 3 and observed DAVID JARAMILLO, aka: "SPIDER," guns, and blues.

133.   Within the last week, CHS-7 has been to Subject Premises 1 and observed DAVID JARAMILLO and CHRISTOPHER PEREZ, aka: "LIL CHUCO." While at Subject Premises 1, CHS-7 observed PEREZ selling blues and meth for DAVID JARAMILLO.

**SUBJECT PREMISES 2, 3, 4, 5, AND 6**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

134.     Within the last four months VGTF agents have learned about a conspiracy between BTL Gang members and associates JUSTIN CROWLEY, aka: "GHOST;" ELTON WALKER, aka: "SPACE;" DAVID ALARID, aka: "ZACH;" STEVEN GOMEZ, aka: "SCRAPPY;" CHARLES GOMEZ, aka: "CUCU;" and ERIC GOMEZ, aka: "INDIO;" to possess firearms and traffic blues from Subject Premises 2, Subject Premises 3, Subject Premises 4, Subject Premises 5, and Subject Premises 6.

<u>SUBJECT PREMISES 2</u>

135.     In September 2023, CHS-8 advised VGTF agents that a BTL Gang member, they only knew as "GHOST," supplied blues to the BTL neighborhood. GHOST lived at Subject Premises 2.[14] CHS-8 believed that GHOST was a BTL Gang member because he supplied blues to many BTL members and always hung out in the BTL neighborhood. CHS-8 believed that GHOST took over Bones' drug customers after Bones was arrested.[15] CHS-8 knew that GHOST was able to sell a considerable amount of blues and had observed him pick up five to six boats per day. Within the last five months, CHS-5 observed GHOST traffic blues from Subject Premises 2 and had observed GHOST with dozens of firearms and Glock switches[16] at Subject Premises 2. CHS-8 described a time in October 2023, when GHOST had been shot at by a rival gang member, the round broke one of his vehicle windows. CHS-8

---

[14] I believe CHS-8 was referring to JUSTIN CROWLEY, aka: "GHOST." CHS-8 only knew the individual as GHOST, however CHS-8 provided the address of Subject Premises 2 as the address of GHOST and specific vehicles he drove. Based on identifying information received from CHS-1, CHS-2, along with the driver's license address of Target Subject JUSTIN CROWLEY, aka: "GHOST," agents were able to identify the person CHS-8 was referring to as JUSTIN CROWLEY, aka: "GHOST."

[15] It is possible that Bones is BTL Gang member Nathon Cotinola, aka: "Bones," who was arrested by the FBI in March 2021.

[16] A Glock switch is a device which replaces the slide-cover plate and allows for full-auto fire. As defined in 26 U.S.C. § 5845(b) the definition of a machinegun is any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger, the frame or receiver of any such weapon, any part designed and intended solely and exclusively or combination of parts designed and intended for use in converting a weapon into a machinegun, or any combination of parts from which a machinegun be assembled if such parts are in the possession of under the control of a person.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

knew that GHOST had a white Cadillac sedan and a white Cadillac Escalade.

136.    Within the last four months CHS-1 advised VGTF agents that JUSTIN CROWLEY, aka: "GHOST," was a fentanyl source of supply to the BTL. CROWLEY lived at and trafficked blues from his residence, Subject Premises 2. CROWLEY had a white Cadillac Escalade, white Cadillac sedan, white Lincoln sedan (with gold rims), and a black Mercedes sedan. CHS-1 had heard CROWLEY say that he would shoot it out with police if they came for him. In October 2023, CROWLEY had been shot at by a rival gang member, the round broke the window in his vehicle. Several times within the last six months, CHS-1 observed CROWLEY supply boats of blues to WALKER from Subject Premises 2. Within the last six months, CHS-1 had observed CROWLEY supply boats of blues to DAVID ALARID, aka: "ZACH." Within the last seven weeks, CHS-1 had observed CROWLEY with dozens of firearms and blues at Subject Premises 2, they knew that CROWLEY traded fentanyl for firearms. Within the last five weeks, CHS-1 had observed CROWLEY with several firearms while distributing blues. CHS-1 explained to VGTF agents that the purpose of the guns was to protect his drugs and profits received from selling blues.

137.    Within the last five weeks, CHS-4 advised agents that an individual they knew only as "GHOST,"[17] supplied BTL members and associates with blues. CHS-4 did not know where GHOST lived but knew that he spent a considerable amount of time in the BTL neighborhood.

138.    Within the last five weeks, CHS-1 conducted a controlled purchase of an amount of fentanyl M30 tablets from CROWLEY. At the time of the controlled purchase, VGTF agents observed CROWLEY in the white Lincoln sedan with rims.

---

[17] I believe CHS-4 was referring to JUSTIN CROWLEY, aka: "GHOST." CHS-8 only knew the individual as GHOST, however based on identifying information received from CHS-1, CHS-2, along with the driver's license address of Target Subject JUSTIN CROWLEY, aka: "GHOST," agents were able to identify the person CHS-8 was referring to as JUSTIN CROWLEY, aka: "GHOST."

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

139.    Within the last four weeks, and on multiple different occasions, VGTF surveillance observed a black Cadillac registered to Kenneth Campos[18] parked in the driveway of Subject Premises 2.

140.    Within the last two weeks, CHS-2 advised VGTF agents that JUSTIN CROWLEY, aka: "GHOST," was a BTL fentanyl supplier who lived at Subject Premises 2. Within the last three weeks, CHS-2 had been to Subject Premises 2 where they observed CROWLEY with a distribution quantity of blues and dozens of firearms. CHS-2 knew that Kenneth Campos, aka: "Fidget," worked with CROWLEY, ELTON WALKER, aka: "SPACE," and Jose Gonzalez, aka: "Cochino," to distribute blues.

### SUBJECT PREMISES 3

141.    Within the last four months, CHS-1 advised VGTF agents that BTL Gang member ELTON WALKER, aka: "SPACE," trafficked blues from his residence, Subject Premises 3. CHS-1 believed that WALKER was a convicted felon. Several times within the last six months, CHS-1 observed CROWLEY supply boats of blues to WALKER at Subject Premises 3. On several different occasions within the last six months, CHS-1 had observed WALKER with firearms and blues at Subject Premises 3. Within the last three months, CHS-1 believed that STEVEN GOMEZ stole several firearms from ELTON WALKER's residence, Subject Premises 3. STEVEN GOMEZ then sold the firearms he stole from Subject Premises 3 to another BTL Gang member, who then sold the firearms to DAVID ALARID, aka: "ZACH." Within the last week, CHS-1 had observed WALKER with several firearms and approximately two boats of blues at Subject Premises 3.

142.    Within the last month, CHS-4 advised VGTF agents that BTL Gang member ELTON WALKER, aka: "SPACE," sold blues from his residence, Subject Premises 3. CHS-4 knew that WALKER had been to prison.

---

[18] Kenneth Campos was incarcerated at the time.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

143.     In December 2023, CHS-9 advised VGTF agents that ELTON WALKER lived at Subject Premises 3, which was owned by his mother Rachel Walker. CHS-9 regularly observed heavy foot and vehicle traffic at Subject Premises 3, the individuals often stayed only a few minutes before leaving. CHS-9 had also observed vehicles park on the road, in front of Subject Premises 3, and observed ELTON WALKER exit Subject Premises 3, approach the driver of the vehicle and lean into the window. The vehicle would then leave and WALKER would go back inside the subject premises. CHS-9 regularly heard gunfire in the area and suspected the visitors to Subject Premises 3 were gang members, due to their clothing and tattoos. CHS-9 described the subjects who frequented Subject Premises 3 to be intimidating.

144.     In January 2024, CHS-10 advised VGTF agents that ELTON WALKER trafficked heroin and fentanyl out of his house, Subject Premises 3. CHS-10 personally knew two subjects who purchased heroin or fentanyl from WALKER at Subject Premises 3. CHS-10 regularly observed foot, bicycle, and vehicle traffic at Subject Premises 3; often times the subjects only stayed at the subject premises for a few minutes before leaving. CHS-10 described the subjects as intimidating. CHS-10 advised agents that on multiple occasions they had observed vehicles park in front of the subject premises. WALKER would then exit the residence and conduct what CHS-10 believed were hand-to-hand drug transaction at the window of the vehicles and the vehicles would then leave the area. On several occasions, CHS-10 observed BTL Gang members arrive to Subject Premises 3 on bicycles for short periods of time. On several occasions, CHS-10 had observed groups of subjects fighting in front of the Subject Premises 3. Within the last year, one of WALKER's gang member drug customers was stomped to death in front of a local grocery store. I later learned that CHS-10 was referring to the murder of Michael Trujillo; the incident was investigated by APD, the suspect was subsequently arrested and charged with murder.

145.     Within the last three weeks, VGTF surveillance observed a black Cadillac registered to Kenneth

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Campos[19] parked in front of Subject Premises 3

146.    Within the last two weeks, CHS-7 advised VGTF agents that they knew ELTON WALKER, aka: "SPACE," sold blues but they did not know where WALKER lived.

147.    Within the last week, CHS-2 advised agents that WALKER possessed guns and trafficked blues from his house, Subject Premises 3. CHS-2 also knew that Kenneth Campos, aka: "Fidget," worked with CROWLEY, WALKER, and Jose Gonzalez, aka: "Cochino," to distribute blues.

<u>**SUBJECT PREMISES 4**</u>

148.    Within the last four months CHS-1 advised VGTF agents that DAVID ALARID, aka: "ZACH," lived at Subject Premises 4. CHS-1 believed that ALARID was a convicted felon. A female named Christina Ferrero was ALARID's girlfriend, who also lived at Subject Premises 4. Ferrero was a heavy meth and fentanyl user who made money stealing high value electronics from Best Buy and other stores on a daily basis. Within the last six months, CHS-1 had observed CROWLEY supply boats of blues to DAVID ALARID, aka: "ZACH," at his house, Subject Premises 4. CROWLEY sometimes spent the night at Subject Premises 4. Within the last three months, CHS-1 believed that STEVEN GOMEZ stole several firearms from ELTON WALKER's house. STEVEN GOMEZ then sold the firearms he stole from WALKER to another BTL Gang member, who then sold the firearms to DAVID ALARID, aka: "ZACH." Within the last week, CHS-1 had observed ALARID with multiple firearms and distribution quantities of blues at Subject Premises 4.

149.    Within the last month and on multiple occasions, VGTF agents observed a sedan bearing NM license plate BPFG78, registered to ALARID's reported girlfriend Christina Ferrero. The vehicle was parked at Subject Premises 4. By way of background, In January 2023, a vehicle registered to Ferrero was also observed at the residence wherein VGTF agents executed a search warrant for evidence of

---

[19] Kenneth Campos was incarcerated at the time.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

VICAR Murder, drug trafficking, and firearms violations; locating evidence of an un-reported murder, fentanyl M30 tablets, and BTL drawings.

## SUBJECT PREMISES 5

150.    Within the last week, CHS-1 advised VGTF agents that BTL Gang member STEVEN GOMEZ, aka: "SCRAPPY," spent the night at Subject Premises 5. STEVEN GOMEZ used the house at Subject Premises 5 and also slept in a camper in the back yard. STEVEN GOMEZ was always armed and trafficked blues from Subject Premises 5. Within the last three months, CHS-1 believed that STEVEN GOMEZ stole several firearms from ELTON WALKER's residence. STEVEN GOMEZ then sold the firearms he stole from WALKER's residence to another BTL Gang member, who then sold the firearms to DAVID ALARID, aka: "ZACH." Within the last week, CHS-1 had observed STEVEN GOMEZ with blues at Subject Premises 5.

## SUBJECT PREMISES 6

151.    Within the last week, CHS-1 advised VGTF agents that STEVEN GOMEZ would frequent Subject Premises 6 during the daytime. CHS-1 knew that STEVEN GOMEZ had two brothers, named CHARLES GOMEZ, aka: "CUCU;" and ERIC GOMEZ, aka: "INDIO," who lived at Subject Premise 6, in the front house. CHS-1 knew that CHARLES and ERIC GOMEZ trafficked blues from Subject Premises 6. CHARLES and ERIC GOMEZ worked with their brother, STEVEN GOMEZ, to traffic blues from Subject Premises 6. CHS-1 believed that CHARLES and ERIC GOMEZ were both convicted felons. CHS-1 believed CHARLES and ERIC GOMEZ possessed firearms at Subject Premises 6. CHS-1 believed that CHARLES and ERIC GOMEZ had several stolen vehicles at Subject Premises 6.

152.    Within the last week, CHS-2 advised agents that STEVEN GOMEZ also frequented Subject Premises 6, where his brothers CHARLES GOMEZ, aka: "CUCU," and ERIC GOMEZ, aka: "INDIO," lived. CHS-2 knew that CHARLES and ERIC GOMEZ lived at Subject Premises 6, where they

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

possessed firearms and trafficked blues.

153.    Within the last month, CHS-4 advised VGTF agents that BTL Gang member STEVEN GOMEZ, aka: "SCRAPPY," lived at Subject Premise 6, in the front house. CHS-4 believed that STEVEN GOMEZ's brothers CHARLES GOMEZ, aka: "CUCU;" and ERIC GOMEZ, aka: "INDIO," also lived at Subject Premises 6. CHS-4 also advised agents that STEVEN, CHARLES, and ERIC GOMEZ trafficked a boat per day and had guns at Subject Premises 6.

### SUBJECT PREMISES 7 AND 8

154.    Within the last two months, VGTF agents have learned about a conspiracy between BTL Gang member JEREMIAH MARTINEZ, aka: "CYCLONE;" and associate STEVO PAULINO, aka: "HEAVEN;" to traffic fentanyl M30 tablets and firearms from Subject Premises 7 and Subject Premises 8.

### SUBJECT PREMISES 7

155.    Within the last two months, CHS-11 advised VGTF agents that BTL Gang member JEREMIAH MARTINEZ, aka: "CYCLONE," lived at Subject Premises 7, where he trafficked blues and firearms. On multiple different occasions, within the last two month, CHS-11 had observed MARTINEZ with several firearms and blues at Subject Premises 7. CHS-11 believed that MARTINEZ obtained the firearms from other BTL members. CHS-11 advised VGTF agents that MARTINEZ had been to prison and that MARTINEZ supplied Target Subject STEVO PAULINO, aka: "HEAVEN," with firearms. Within the last week, CHS-11 observed MARTINEZ with blues and guns at Subject Premises 7.

156.    Within the last month, CHS-1 and CHS-4 advised VGTF agents that BTL Gang member JEREMIAH MARTINEZ, aka: "CYCLONE," had been to prison, was always armed, and he was a drug trafficker, however they had not seen MARTINEZ in a while.

157.    Within the last 4 weeks, CHS-11 conducted a controlled purchase of an amount of fentanyl M30

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

tablets from JEREMIAH MARTINEZ, aka: "CYCLONE," at Subject Premises 7.

158.    Within the last two weeks, and on multiple occasions, VGTF agents conducted surveillance at Subject Premises 7 and observed several individuals enter the apartments and leave several minutes later, activity consistent with drug trafficking.

159.    Within the last week, CHS-11 observed MARTINEZ at Subject Premises 7 with guns and blues.

### SUBJECT PREMISES 8

160.    Within the last two months, CHS-11 advised VGTF agents that they had observed PAULINO with multiple firearms and blues at his residence, Subject Premises 8. CHS-11knew PAULINO trafficked about 2 boats of blues from his residence, Subject Premises 8, per week. CHS-11 was not sure if PAULINO had been to prison and knew that MARTINEZ assisted PAULINO with his drug trafficking ventures. Within the last week, CHS-11 observed PAULINO with blues and guns at Subject Premises 8.

161.    Agents viewed a social media profile belonging to PAULINO. Contained within PAULINO's social media profile are several photos of him holding firearms and large amounts of US Currency. I have included several screen shots from PAULINO's social media account below.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**



STEVO PAULINO's social media posts, the top right photo was posted Dec 27, 2023

162.    Within the last 5 weeks, CHS-11 conducted a controlled purchase of an amount of fentanyl M30 tablets from STEVO PAULINO, aka: "HEAVEN," at Subject Premises 8.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

163.    Within the last two weeks, and on multiple occasions, VGTF agents conducted surveillance at Subject Premises 8 and observed several individuals enter the apartments and leave several minutes later, activity consistent with drug trafficking.

164.    CHS-11 viewed the above social media photos and advised VGTF agents that the photos are of STEVO PAULINO, aka: "HEAVEN," and were taken inside his residence, Subject Premises 8.

### THE SUBJECT PREMISES

165.    Subject Premises 1 is located at 2907 Carlton Street NW, Albuquerque, NM, 87107, and may be described as a single story residence with brown stucco siding, a flat roof, and white trim. There are faded numbers posted above the door which appear to read 2907. Color photographs of Subject Premises 1 are contained within Attachment A-1.

166.    Indicia of Residence:

   a.   REYNALDO JARAMILLO's driver's license address is Subject Premises 1.

   b.   According to the Bernalillo County Assessor's Office (BCAO) website, Subject Premises 1 is owned by RAY JARAMILLO and Geneva Jaramillo.

   c.   REYNALDO JARAMILLO's listed address through the NMCD is Subject Premises 1.

   d.   Several police reports, as recent as December 2023 and dating back years, list Subject Premises 1 as the residence of REYNALDO JARAMILLO and DAVID JARAMILLO.

   e.   CHS-1, CHS-2, CHS-4, CHS-5, and CHS-7 advised VGTF agents that REYNALDO and DAVID JARAMILLO lived at Subject Premises 1.

   f.   CHS-1, CHS-2, CHS-4, and CHS-5 advised VGTF agents that CHRISTOPHER PEREZ, aka: "LIL CHUCO," is hiding out, armed, and trafficking fentanyl from Subject Premises 1.

   g.   Within the last seven weeks, CHS-1 has observed PEREZ and MARTIN JARAMILLO,

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

aka: "TEENER," traffic blues at Subject Premises 1.

h.  Within the last week, CHS-7 observed DAVID JARAMILLO and CHRISTOPHER PEREZ trafficking blues and meth from Subject Premises 1.

i.  Within the last two months, and on multiple different occasions, VGTF surveillance units have observed multiple vehicles arrive at Subject Premises 1 and leave several minutes later. In my training and experience, the short duration stops are consistent with drug trafficking activity.

167.  <u>Subject Premises 2</u> is located at 2925 Indiana Street NE, Albuquerque, NM 87110 and may be described as a two story residence with brick and white siding, a red metal roof, and white trim. The numbers 2925 are painted on the curb in front of Subject Premises 3. Color photographs of Subject Premises 2 are contained within Attachment A-2.

168.  <u>Indicia of Residence:</u>

a.  JUSTIN CROWLEY's driver's license address is Subject Premises 2.

b.  CHS-1, CHS-2, and CHS-8, advised VGTF agents that JUSTIN CROWLEY lived at Subject Premises 2.

c.  Within the last seven weeks, CHS-1 and CHS-2 observed CROWLEY with firearms and fentanyl M30 tablets at Subject Premises 2.

d.  Within the last three weeks, VGTF surveillance observed a black Cadillac bearing NM tag BPTZ82, registered to Kenneth Campos, parked in the driveway of Subject Premises 2.

e.  Within the last week, and on multiple prior occasions, VGTF surveillance has observed CROWLEY's black Mercedes sedan, white Lincoln sedan, white Cadillac sedan, and white Cadillac Escalade at Subject Premises 2.

169.  <u>Subject Premises 3</u> is located at 1319 Cherokee Road NW, Albuquerque, NM 87107, and may

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

be described as a single story residence with natural brick/tan stucco siding, a gray shingle roof, with red and white trim. The number 1319 are painted on the curb in front of Subject Premises 3. Color photographs of Subject Premises 3 are contained within Attachment A-3.

170.   Indicia of Residence:

    a.   ELTON WALKER's driver's license address is Subject Premises 3.

    b.   WALKER's address listed with the NMCD is Subject Premises 3.

    c.   According to the BCAO website, Subject Premises 3 is owned by Rachel Walker.

    d.   Within the last year, there have been multiple law enforcement complaints that ELTON WALKER is trafficking controlled substances from Subject Premises 3, the last report is as recent as October 2023.

    e.   According to police records, MARTIN JARAMILLO, aka: "TEENER," has been associated with Subject Premises 3 multiple times within the last year.

    f.   CHS-1, CHS-2, CHS-4, CHS-9, and CHS-10 advised VGTF agents that ELTON WALKER lived at Subject Premises 3.

    g.   CHS-9 advised VGTF agents that Subject Premises 3 was owned by ELTON WALKER's mother, named Rachel Walker.

    h.   Within the last month, VGTF surveillance units observed a black Cadillac bearing NM tag BPTZ82, registered to Kenneth Campos, parked at Subject Premises 3.

    i.   Within the last two weeks, CHS-1 observed ELTON WALKER and STEVEN GOMEZ, aka: "SCRAPPY," at Subject Premises 3.

171.   Subject Premises 4 is located at  4600 11th Street NW, Albuquerque, NM 87107, and may be described as a single story residence with tan stucco siding, a gray metal roof, and the numbers 120 posted on the mailbox near the street. Color photographs of Subject Premises 4 are contained within

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Attachment A-4.

172.   Indicia of Residence:

a.   According to the BCAO website, ALARID is the owner of Subject Premises 4.

b.   Police reports list Subject Premises 4 as the residence of ALARID.

c.   Within the last week, and on multiple different prior occasions, VGTF surveillance observed an older model flat-bed truck (which did not appear to move very often) parked in a driveway at Subject Premises 4. The flat-bed truck is registered to ALARID at Subject Premises 4.

d.   Within the last month, on multiple different occasions, VGTF surveillance observed a black Mercedes sedan parked at Subject Premises 4. CHS-1 confirmed the black Mercedes sedan belonged to JUSTIN CROWLEY, aka: "GHOST." Agents subsequently observed the same vehicle at Subject Premises 2.

e.   Within the last three weeks, VGTF surveillance observed ALARID at Subject Premises 4.

f.   CHS-1 advised VGTF agents that ALARID lived at Subject Premises 4.

173.   Subject Premises 5 is located at 218 Candelaria Road NW, Albuquerque, NM 87107, and may be described as a single story residence with gray stucco siding, a gray shingle roof, white and blue trim, and the numbers 218 posted on the porch. Color photographs of Subject Premises 5 are contained within Attachment A-5.

174.   Indicia of Residence:

a.   Subject Premises 5 is listed as the residence of STEVEN GOMEZ, aka: "SCRAPPY," and CHARLES GOMEZ, aka: "CUCU," on their driver's license.

b.   CHS-1 advised VGTF agents that STEVEN GOMEZ slept at Subject Premises 5.

c.   Within the last two weeks, VGTF surveillance units observed STEVEN GOMEZ at Subject

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

Premises 5.

d. Within the last week, CHS-1 observed STEVEN GOMEZ at Subject Premises 5, who reported to CHS-1 that he was living in a camper in the backyard of Subject Premises 5.

175.  Subject Premises 6 is located at 120 Veranda Road NW, Albuquerque, NM 87107, and may be described as a single family residence with brown stucco siding, a gray shingle roof, white trim, and the numbers 120 posted on the porch. There is a black tarp wrapped around the front porch. According to my observations, open source research, and CHS reports, it appears that there are three different residences located on the property, separated by a wooden fence and designated by letters. However, during surveillance agents have been unable to locate letters posted on any of the three doors to the three separate buildings. As such, the warrant I am applying for will authorize agents to only search the front house located at 120 Veranda Road NW, Albuquerque, NM 87107. Color photographs of Subject Premises 6 are contained within Attachment A-6.

176.  Indicia of Residence:

a. CHS-1 advised VGTF agents that there were always multiple stolen vehicles at Subject Premises 6.

b. CHS-1, CHS-2, and CHS-4 advised VGTF agents that STEVEN GOMEZ, aka: "SCRAPPY," often spent a considerable amount of time at Subject Premises 6, in the front house.

c. CHS-1, CHS-2, and  CHS-4 advised VGTF agents that CHARLES GOMEZ, aka: "CUCU," and ERIC GOMEZ, aka: "INDIO," lived at Subject Premises 6, in the front house.

d. Within the last two weeks, VGTF surveillance units observed CHARLES and ERIC GOMEZ park in the driveway of Subject Premises 6 and enter the residence.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

    e.  Within the last two weeks, and on multiple different occasions within the last two months, VGTF surveillance units observed various and multiple vehicles parked in front of Subject Premises 6 with no license plates. In my training and experience vehicles with no license plates are often times stolen.

177.  <u>Subject Premises 7</u> is located at 405 San Pablo Street SE, Apartment 8, Albuquerque, NM 87108, and may be described as a two story apartment building with the name "Brentwood East" on the southeast side of the building. Subject Premises 7, Apartment 8, is located on the 1st floor on the northeast side of the building. The door to Subject Premises 7, Apartment 8, faces east and the number 8 is posted on the door. Color photographs of Subject Premises 7 are contained within Attachment A-7.

178.  <u>Indicia of Residence:</u>

    a.  CHS-11 advised VGTF agents that JEREMIAH MARTINEZ, aka: "CYCLONE," lived at Subject Premises 7.

    b.  Within the last three weeks, and on multiple different occasions, VGTF surveillance has observed MARTINEZ going in and out of Subject Premises 7.

    c.  Within the last two weeks days, VGTF surveillance units observed MARTINEZ at Subject Premises 7.

    d.  Within the last week, CHS-11 observed JEREMIAH MARTINEZ living at Subject Premises 7.

179.  <u>Subject Premises 8</u> is located at 405 San Pablo Street SE, Apt 13, Albuquerque, NM 87108, and may be described as a two story apartment building with the name "Brentwood East" on the southeast side of the building. Subject Premises 8, Apartment 13, is located on the 2nd floor in the middle of the building. The door to Subject Premises 8, Apartment 13 faces east, and the number 13 is posted on the door. Color photographs of Subject Premises 8 are contained within Attachment A-8.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

180.   Indicia of Residence:

    a.   An October 2023, police report lists Subject Premises 8 as the residence of record for STEVO PAULINO.

    b.   PAULINO's listed address through the NMCD is Subject Premises 8.

    c.   CHS-11 advised VGTF agents that STEVO PAULINO, aka: "HEAVEN," lived at Subject Premises 8.

    d.   Within the last three weeks, and on multiple different occasions, VGTF surveillance observed PAULINO going in and out of Subject Premises 8.

    e.   Within the last two weeks, VGTF surveillance units observed PAULINO exiting Subject Premises 8.

    f.   Within the last week, CHS-11 observed STEVO PAULINO living at Subject Premises 8.

## REQUEST FOR NIGHTTIME SERVICE

181.   I am requesting the Court authorize the FBI to serve these warrants any time after 4:30 a.m., as set forth under Fed. R. Crim. Proc. 41(e) (2) (A) (ii). Agents and officers will be attempting to serve the requested search warrants in closely coordinated and simultaneous raids. FBI SWAT teams have been briefed on this operation and will be utilized to execute the search warrants. I am requesting the Court authorize the FBI to serve the requested search warrants for a number of factors:

    a.   the search warrants will need to be executed in a closely coordinated and simultaneous sequence;

    b.   the locations and persons to be searched are located in different parts of the city;

    c.   many of the Subject Premises are believed to be equipped with cameras;

    d.   firearms are believed to be present at the subject's residences;

    e.   the majority of the Target Subjects have extensive criminal histories; and

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

     f.   many of the Subject Premises are located near schools and/or school bus stops and I would like to avoid school-age children congregating around bus stops or otherwise traveling toward schools. I believe many of the schools in the targeted areas start as early as 7:20 a.m.

182.   Therefore, I am requesting authorization to serve the requested search warrants at any time after 4:30 a.m.

**SEARCHING FOR GANG TATTOOS**

183.   When the search warrants are executed, agents will attempt to interview the Target Subjects about their gang membership. I believe gang tattoos to be significant evidence of gang affiliation and such tattoos may constitute an overt act, in-so-much-as gang-specific tattoos enable a person to maintain or increase their position within the gang. I have included several BTL tattoos in the pages that follow.

184.   It has been my experience that many people lie when speaking with law enforcement and will sometimes go to great lengths to conceal their gang ties. Furthermore, the persons to be searched may exercise their constitutional right to refrain from speaking with law enforcement agents. In an effort to discern and document the Target Subject's gang affiliation, I am requesting law enforcement agents be permitted to search the bodies of the male Target Subjects, above the waist and below the thighs, for tattoos.

185.   I am aware that gang members, including BTL Gang members, often have distinct tattoos that represent their dedication to their respective criminal enterprises. Members display these tattoos to gain respect within the enterprise and to intimidate non-members. I am seeking the court's permission to utilize law enforcement photographers to photograph and document the Target Subject's tattoos. Such photo documentation would help positively identify subjects and better document and determine their gang affiliation.

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

186.    Law enforcement and corrections department records that I have reviewed in this case indicate that all of the male Target Subjects have one or more tattoos on their bodies.  I believe the male Target Subjects may have gang related tattoos.

<u>CONCLUSION</u>

187.    Based on the information contained herein, I submit there is probable cause for a search warrant authorizing the examination of the Subject Premises described in Attachment A to seek the items described in Attachment B for evidence pertaining to violations of the Target Offenses. This affidavit was reviewed by Assistant United States Attorney Paul Mysliwiec.

Respectfully submitted,

Jordan Spaeth
FBI Special Agent

Subscribed electronically and sworn telephonically on February 13, 2024.

JENNIFER M. ROZZONI
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

**ATTACHMENT A-1**
**Person and Premises to be Searched**

<u>Persons to be searched</u>: DAVID JARAMILLO, aka: "SPIDER," born in 1975, who appears in the

photograph below. A color photograph of DAVID JARAMILLO follows:



CHRISTOPHER PEREZ, aka: "LIL CHUCO," born in 1997, who appears in the photograph below. A

color photograph of PEREZ follows:



**ATTACHMENT A-1**
**Person and Premises to be Searched**

MARTIN JARAMILLO, aka: "TEENER," born in 1986, who appears in the photograph below. A color

photograph of MARTIN JARAMILLO follows:



REYNALDO JARAMILLO, aka: "RAY," born in 1948, who appears in the photograph below. A color

photograph of REYNALDO JARAMILLO follows:



**ATTACHMENT A-1**
**Person and Premises to be Searched**

FELIX SILVA, aka: "GATO," born in 1972, who appears in the photograph below. A color photograph

of SILVA follows:



Premises to be Searched: Subject Premises 1 is located at 2907 Carlton Street NW, Albuquerque, NM,

87107 the Subject Premises may be described as a single story residence with brown stucco siding, a flat

roof, and white trim. There are faded numbers posted above the door, which appear to read 2907.

Color photographs are attached below.



Surveillance photos from December 2023. Notice the brick wall with BTL graffiti.

**ATTACHMENT A-1**
**Person and Premises to be Searched**



Property record map from Bernalillo County Assessors Office

The search of Subject Premises 1 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting

**ATTACHMENT A-1**
**Person and Premises to be Searched**

to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-2**
**Person and Premises to be Searched**

<u>Person to be searched</u>: JUSTIN CROWLEY, aka: "GHOST," born in 1982, who appears in the photograph

below. A color photograph of CROWLEY follows:



<u>Premises to be Searched:</u> Subject Premises 2 is located at 2925 Indiana Street NE, Albuquerque, NM

87110, and may be described as a two story residence with brick and white siding, a red metal roof, and

white trim. The numbers 2925 are painted on the curb in front of Subject Premises 2. Color photographs

of Subject Premises 2 are contained below.



Google Streetview Photo, February 2022.

**ATTACHMENT A-2**
**Person and Premises to be Searched**



Property record map from Bernalillo County Assessors Office

The search of Subject Premises 2 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device to, provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

**ATTACHMENT A-2**
**Person and Premises to be Searched**

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-3**
**Person and Premises to be Searched**

<u>Persons to be searched</u>: ELTON WALKER, aka: "SPACE," born in 1973, who appears in the photograph below. A color photograph of WALKER follows:



<u>Premises to be Searched:</u> Subject Premises 3 is located at 1319 Cherokee Road NW, Albuquerque, NM 87107, and may be described as a single story residence with natural brick/tan stucco siding, a gray shingle roof, with red and white trim. The number 1319 are painted on the curb in front of Subject Premises 3. Color photographs are attached below.



Google Streetview Photo, January 2022.

**ATTACHMENT A-3**
**Person and Premises to be Searched**



Property record map from Bernalillo County Assessors Office

The search of Subject Premises 3 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device to, provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting

**ATTACHMENT A-3**
**Person and Premises to be Searched**

to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-4**
**Person and Premises to be Searched**

<u>Person to be searched</u>: DAVID ALARID, aka: "ZACH," born in 1976, who appears in the photograph below. A color photograph of ALARID follows:



<u>Premises to be Searched:</u> Subject Premises 4 is located at  4600 11th Street NW, Albuquerque, NM 87107, and may be described as a single story residence with tan stucco siding, a gray metal roof, and the numbers 120 posted on the mailbox near the street. Color photographs of Subject Premises 4 are contained below.



Surveillance photo

### ATTACHMENT A-4
### Person and Premises to be Searched



Property record map from Bernalillo County Assessors Office

The search of Subject Premises 4 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

Biometric Access to Devices: During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device to, provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1.  Any devices found at the premises, and

2.  Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting

**ATTACHMENT A-4**
**Person and Premises to be Searched**

to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-5**
**Person and Premises to be Searched**

<u>Person to be searched</u>: STEVEN GOMEZ, aka: "SCRAPPY;" born in 1983, who appears in the photograph below. A color photograph of STEVEN GOMEZ follows:



<u>Premises to be Searched:</u> Subject Premises 5 is located at 218 Candelaria Road NW, Albuquerque, NM 87107, and may be described as a single story residence with gray stucco siding, a gray shingle roof, white and blue trim, and the numbers 218 posted on the porch. Color photographs of Subject Premises 5 are contained below.



January 2023, Google Streetview Photo

**ATTACHMENT A-5**
**Person and Premises to be Searched**



Property record map from Bernalillo County Assessors Office

The search of Subject Premises 5 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual who, is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device to, provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting

**ATTACHMENT A-5**
**Person and Premises to be Searched**

to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-6**
**Person and Premises to be Searched**

<u>Person to be searched</u>: CHARLES GOMEZ, aka: "CUCU;" born in 1990, who appears in the photograph

below. A color photograph of CHARLES GOMEZ follows:



ERIC GOMEZ, aka: "INDIO;" born in 1986, who appears in the photograph below. A color

photograph of ERIC GOMEZ follows:



<u>Premises to be Searched:</u> Subject Premises 6 is located at 120 Veranda Road NW, Albuquerque, NM

87107, and may be described as a single family residence with brown stucco siding, a gray shingle roof,

**ATTACHMENT A-6**
**Person and Premises to be Searched**

white trim, and the numbers 120 posted on the porch. There is a black tarp wrapped around the front porch. According to my observations, open source research, and CHS reports, it appears that there are three different residences located on the property, separated by a wooden fence and designated by letters. However, during surveillance agents have been unable to locate letters posted on any of the three doors to the three separate buildings.

As such, the warrant I am applying for will authorize agents to only search the front house located at 120 Veranda Ave NW, Albuquerque, NM 87107, designated by the red circle in the aerial photograph below.



Surveillance Photo



Property record map from Bernalillo County Assessors Office

**ATTACHMENT A-6**
**Person and Premises to be Searched**



Aerial photograph of Subject Premises 6, designated by the red circle.

The search of Subject Premises 6 shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by occupants of Subject Premises 6. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device to, provide biometric

**ATTACHMENT A-6**
**Person and Premises to be Searched**

features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-7**
**Person and Premises to be Searched**

<u>Person to be searched</u>: JEREMIAH MARTINEZ, aka: "CYCLONE," born in 1978, who appears in the photograph below. A color photograph of MARTINEZ follows:



<u>Premises to be Searched:</u> Subject Premises 7 is located at 405 San Pablo Street SE, Apartment 8, Albuquerque, NM 87108, and may be described as a two story apartment building with the name "Brentwood East" on the southeast side of the building. Subject Premises 7, Apartment 8, is located on the 1st floor on the north side of the building. The door to Subject Premises 7, Apartment 8, faces east and the number 8 is posted on the door.

Color photographs are attached below.



Google Streetview Photo, January 2023.

**ATTACHMENT A-7**
**Person and Premises to be Searched**



Surveillance photo of Subject Premises 7, circled in red is the door to Apartment 8, the number 8 is posted on the door

The search of Subject Premises 7 shall include the entire residence and shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as

**ATTACHMENT A-7**
**Person and Premises to be Searched**

described in the search warrant affidavit and warrant attachments for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A-8**
**Person and Premises to be Searched**

<u>Person to be searched</u>: STEVO PAULINO, aka: "HEAVEN," born in 1993, who appears in the photograph

below. A color photograph of PAULINO follows:



<u>Premises to be Searched:</u> Subject Premises 8 is located at 405 San Pablo Street SE, Apt 13,

Albuquerque, NM 87108, and may be described as a two story apartment building with the name

"Brentwood East" on the southeast side of the building. Subject Premises 8, Apartment 13, is located on

the 2nd floor in the middle of the building. The door to Subject Premises 8, Apartment 13, faces east, and

the number 13 is posted on the door. Color photographs of Subject Premises 8 are contained below.



Google Streetview Photo, January 2023

**ATTACHMENT A-8**
**Person and Premises to be Searched**



Surveillance Photo, December 2023. Subject Premises 8, Apartment 13, is designated at the end of the red arrow.

The search of Subject Premises 8 shall include the entire residence and shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments for the purpose of attempting

**ATTACHMENT A-8**
**Person and Premises to be Searched**

to unlock the devices' security features in order to search the contents as authorized by this warrant.

3. This warrant authorizes law enforcement personnel to compel any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the individual state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT B**
**Items to be Seized**

**Items to be Seized: A**ll evidence, fruits, and instrumentalities of violations of: 21 U.S.C. § 846 Attempt and Conspiracy to Distribute Controlled Substances; 21 U.S.C. § 841(a) Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 924(c) Possession of a Firearm in Furtherance of a Drug Trafficking Crime; 18 U.S.C. § 922(g) Being a Prohibited Person in Possession of Firearm or Ammunition; 18 U.S.C. § 922(o) Unlawful Possession of a Machine Gun; 18 U.S.C. § 856 Maintaining a Drug Involved Premises; 18 U.S.C. § 371 Conspiracy; 18 U.S.C. § 792 Harboring or Concealing a Fugitive; 18 U.S.C. § 1962 Racketeering Influenced Corrupt Organization (RICO); and 18 U.S.C. § 1959 Violent Crime in Aid of Racketeering (VICAR).to include the following:

1. Evidence of membership or affiliation with the Brew Town Locos (BTL) street gang: to include any tattoos, documents, photographs, drawings, writing, or objects depicting gang members names, initials, logos, monikers, slogans, or any item depicting potential gang membership, affiliation, activity or identity; "green light"/ disciplinary list, murder/assault list, witness or confidential informant lists, inmate lists, address/telephone number list, letter, law enforcement reports, jail or department of corrections reports, judgments, pre-sentencing reports, newspaper articles, computer generated reports/printouts, legal documents, detention facility inmate number lists or addresses for inmates or detention facilities;

2. Firearms, firearm parts, magazines, and ammunition;

3. All safes or lock boxes, where evidence of the Target Offenses may be stored for safekeeping against seizure;

4. Controlled substances, drug packaging materials, and paraphernalia;

5. Large amounts of United States Currency and expensive jewelry;

6. Video surveillance hard drives or storage devices;

7. Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys. All documentation, (whether on paper or stored magnetic, digital, or optical media) describing discussions by any individual or entity concerning: the identity of persons that are involved in violations of the Target Offenses;

8. All documents and communications (whether on paper or stored magnetic, digital, or optical media) demonstrating any communication or correspondence with any person or groups of persons involved in violations of the Target Offenses;

9. All evidence related to all off-site storage units, other residences, safety deposit boxes, etc. where evidence of the Target Offenses may be stored for safekeeping against seizure; and

10. Cellular telephones and all cellular telephone records to establish ownership of the device or the residence.